**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

EUGENE HUDSON, JR.
12723 Parkton Street
Ft. Washington, MD 20744

        Plaintiff

                                JURY DEMAND

v.                             Civil Action No.

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES
80 F Street, N. W.
Washington, D. C. 20001

        Defendant

---

**COMPLAINT**

**<u>PARTIES</u>**

1.    Eugene Hudson, Jr.  (Hudson), is the first African American elected to the position of AFGE National Secretary-Treasurer (NST), the union's second highest ranking officer.

2.    Mr. Hudson served as NST from August 2012 through August 2015.  He was re-elected as NST by acclamation in August 2015 for a three-year term that ended in August 2018.

3.    Prior to his election as NST, Mr. Hudson served as the National Vice President (NVP) for AFGE District 12 for five consecutive terms.

4.    Mr. Hudson was one of the most experienced, longest serving members of the AFGE National Executive Council (NEC).

5.    For 40 years, Mr. Hudson has been a member in good standing of AFGE.

6.    For approximately 33 years, from 1984 until 2017, Mr. Hudson was a member in good standing of Local 2452 in Los Angeles, California.

7.      Prior to that Mr. Hudson had been a member in good standing of Local 2879 in San Diego, California from 1977 until 1984.

8.      Defendant AFGE is a private sector employer.

9.      Defendant AFGE is a national labor organization within the meaning of 29 U.S.C. §402(I) and 29 U.S.C. §185.

10.     Jeffery David Cox (Cox) was the elected National President of AFGE and the union's highest-ranking officer from August 2012 until Cox retired on February 28, 2020, following numerous claims by AFGE staff and contractors that Cox engaged in racial discrimination, sexual harassment, sexual abuse, bullying, and financial misconduct.

11.     An AFGE Committee of Investigation chaired by AFGE National Vice President (NVP) David Mollett concluded that President Cox improperly used AFGE resources when  Cox ordered AFGE Confidential Secretary Rocky Kabir to secretly work on Cox's August 2018 AFGE national re-election campaign from Cox's Silver Spring, Maryland apartment.

12.     In May 2021, an outside forensic auditing firm retained by AFGE, CohnReznick, found that Cox submitted expense vouchers totaling approximately $300,000 for limousine services provided by CCS Limousine Services (CCS Limo).

13.     Of the $300,000 that Cox spent on limousine expenses, CohnReznick determined that Cox provided no receipts or supporting documentation for approximately $114,000 of Cox's CCS Limo expense vouchers.

14.     Following a five-month investigation an independent law firm retained by AFGE, Working Ideal, determined in March 2020 that President Cox bullied and discriminated against numerous AFGE employees and consultants based on their race, religion, and sex.

15.     Working Ideal concluded in March 2020 that Cox sexually harassed numerous AFGE employees and contractors over the years, including, among others, Cox's AFGE Confidential Secretary Rocky Kabir,  former AFGE Communications Director Brett Copeland, and certain CCS Limo drivers.

16.     AFGE maintains its principal office at 80 F Street, N. W., Washington, D. C. 20001 and has approximately 1067 affiliated Local Unions, spread across the country, including Local 3723 and Local 1923.

17.     AFGE is governed by a National Executive Council (NEC) which is composed of the National President (NP), the National Secretary-Treasurer (NST), the National Vice President for Women and Fair Practices (NVPWFP) and National Vice Presidents (NVP) for 12 AFGE Districts.  The three AFGE general officers (NP, NST, and NVPWFP) are elected by the members of AFGE every three years at the AFGE National Convention.   The next AFGE National Convention is scheduled for June 2022.

18.     Mr. Hudson announced his candidacy to run for the position of National President during the upcoming June 2022 AFGE National Convention.

19.     Defendant AFGE has refused to recognize Mr. Hudson as a candidate for the position of National President during the upcoming June 2022 AFGE National Convention because AFGE claims that Mr. Hudson is not an AFGE member in good standing.

## JURISDICTION AND VENUE

20.     Plaintiff Eugene Hudson, Jr. worked for the U.S. Social Security Administration for 13 years, from 1976 to 1989.

21.     Article III, Section 1(b)  of the AFGE Constitution permits **current** federal, District of Columbia and military government employees to become Active members of AFGE with the

right to vote and run for AFGE office so long as they pay their AFGE Active membership dues without a break.

22.     Mr. Hudson paid his AFGE Active membership dues without a break and maintained his membership under Article III, Section 1(b) of the AFGE Constitution during the period that he was employed by the federal government from 1976 to February 1989.

23.     In February 1989, Eugene Hudson, Jr. voluntarily resigned from the federal government.

24.     Mr. Hudson did **not separate** from the federal government with prejudice.

25.     Mr. Hudson did **not retire** from the federal government.

26.     Mr. Hudson withdrew his retirement contributions when he voluntarily separated from the federal government in 1989.

27.     In February 1989, immediately after Mr. Hudson voluntarily separated from the federal government without prejudice, AFGE, a private sector employer, hired Mr. Hudson as a National Representative.

28.     Article III, Section 1(c)  of the AFGE Constitution permits former government employees who originally derived their AFGE membership pursuant to Article III, Section 1(b) of the AFGE National Constitution to continue to remain Active members in good standing after separating from government employment, and they may do so *while working in the private sector* so long as the member continues to pay his AFGE dues without a break after leaving the government.

29.     Pursuant to Article III, Section 1(c) of the AFGE Constitution, after resigning from the federal government, Mr. Hudson continued to pay his dues as an Active AFGE member until December 2013 when Mr. Hudson turned 60 years old when his local union converted him from AFGE Active membership to AFGE Retired membership status.

30.     As an AFGE Retired Member, Mr. Hudson's AFGE dues were reduced to approximately $50 per year from approximately $450 per year that Mr. Hudson had been paying as an Active AFGE member.

31.     As an AFGE Retired Member, Mr. Hudson was able to vote, attend AFGE meetings, and run for elected AFGE office.

32.     After nearly 30 years of service to AFGE, Mr. Hudson retired *as an AFGE employee* on September 1, 2017, shortly after AFGE removed him as the duly elected AFGE National Secretary Treasurer on August 8, 2017.

33.     Thus, Eugene Hudson, Jr. is a **private sector retiree.**

34.     Plaintiff Eugene Hudson, Jr. **is not a government retiree or a public sector retiree.**

35.     From December 2013 until the present, Mr. Hudson has continued to pay (or attempted to pay) his AFGE Retired Member dues without a break. As an AFGE Retired member, Mr. Hudson has the right to vote, attend NEC meetings, and run for elected AFGE office.

36.     AFGE is a "mixed union" as it represents both public and private workers. *See Wildberger v. Am. Fed'n of Gov't Emps., 86 F.3d 1188, 1192-93 (D.C. Cir. 1996)."*

37.     AFGE and its members, including Plaintiff, are governed by the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA) and the Labor Management Relations Act  of 1947 (LMRA) (also known as the Taft-Hartley Act).

38.     These statutes grant Plaintiff the right to file this complaint that Defendant AFGE violated Mr. Hudson's rights guaranteed by the LMRDA and the LMRA in federal court, seek injunctive relief, demand a jury trial, and request punitive damages.

39.     The LMRDA declares: "Civil action for infringement of rights; jurisdiction[:] Any person whose rights secured by the provisions of this title [29 USCS §§ 411 et seq.] have been infringed

by any violation of this title [29 USCS §§ 411 et seq.] may bring a civil action in a district court

of the United States for such relief (including injunctions) as may be appropriate. Any such

action against a labor organization shall be brought in the district court of the United States for

the district where the alleged violation occurred, or where the principal office of such labor

organization is located."

40.    Therefore, this Court has subject matter jurisdiction over this litigation pursuant to 28

U.S.C. §1331, 28 U.S.C. §1367, 29 U.S.C. §412, and 29 U.S.C. §185, the LMRDA and the

LMRA.

41.    AFGE and its members, including Plaintiff, are governed by Title VII of the Civil Rights

Act of 1964 ("Title VII")  and 42 U.S.C. 1981.  These statutes grant Plaintiff the right to file this

complaint of racially disparate treatment and racial discrimination in the denial of his union

membership status against Defendant AFGE in federal court, seek injunctive relief, demand a

jury trial, and request punitive damages.

42.    Federal district courts are given supplemental jurisdiction over state law claims that

"form part of the same case or controversy" as federal claims over which they have original

jurisdiction. See 28 U.S.C. § 1367(a).

43.    Thus, this Court has pendent jurisdiction over Plaintiff's related state claims of slander,

libel, defamation, and intention infliction of emotional distress  alleged herein.

44.    This Court has venue over this matter pursuant to 28 U.S.C. §1391(b)(1), 29 U.S.C. 412,

and 29 U.S.C. §185(c), because Defendant AFGE maintains its principal offices in the District of

Columbia, and the violations occurred in the District of Columbia.

45.    AFGE National's headquarters is located in Washington, D. C.   Therefore, venue is

proper in the District of Columbia in this case. *See: Latch String, Inc. v. Rouse Co.*, 1977 U.S.

Dist. LEXIS 18086 (United States District Court for the District of Columbia, January 4, 1977) (Civil Action No. 76-1502) (defendant's "contacts with the District of Columbia were substantial and continuous" and thus venue was proper in the District of Columbia).

## STATEMENT OF FACTS

46.  In June 2017, the AFGE NEC enacted a new Dues Delinquency Policy which requires that all AFGE local affiliates must inform a member in writing via U.S. Postal Service and by email that his or her AFGE membership dues are delinquent.

47.  The AFGE Dues Delinquency Policy further mandates that all AFGE local affiliates must give a member a reasonable period of time within which to pay the delinquent dues before terminating the member's AFGE membership.

48.  The NEC's requirement for a reasonable notice of nonpayment of membership dues is consistent AFGE Associate General Counsel John Thompson's testimony during a June 1, 2018 arbitration termination hearing in the case of AFGE employee Jocelynn Johnson.

49.  AFGE Associate General Counsel John Thompson testified under oath during the June 1, 2018 arbitration termination hearing in AFGE employee Jocelynn Johnson's case: "So a retired member is someone who reaches the end of their employment, retires, and as they walk out the door or, you know, or in some reasonable time thereafter, pay dues to maintain essentially full membership in the local. And they continue to pay those dues without any substantial break, you know, obviously there's a bit of a grace period. We're talking on the order of months, like short number of months as opposed to years or even six months." *(Exhibit 1: Testimony of AFGE Associate General Counsel John Thompson in the Transcript of Jocelynn Johnson's Arbitration Hearing, dated June 1, 2018, p. 221, lines 12 through 22 to page 222, line 2)*

50.  Article III of the AFGE National Constitution establishes the following four categories of AFGE members in Sections 1(b) through 1(e):

**Section 1(b) -** current federal and District of Columbia government employees, including the military;

**Section 1(c) -** former federal and District of Columbia government employees, including the military, who voluntarily separated from the government but who continued to pay their AFGE membership dues with no break in service. Article III,  Section 1(c) of the AFGE National Constitution further states that AFGE members who retire from the federal or D.C. Government with **no lapse** in their dues payments may continue as AFGE members with all rights, including the right to vote and run for office.  <u>See</u>:  AFGE National Constitution, Article III, Section 1(c).

**Section 1(d)** - any federal and District of Columbia government employees, including the military, separated for unjust cause or who was separated and unsuccessfully represented by the union;

**Section 1(e)** -  Special Retiree Affiliate - any person whose AFGE membership derives from Article III, Section 1(b) of the AFGE National Constitution who did not continue to pay their AFGE  membership dues without a break in service *following their retirement from the federal government, District government   or the militar*y.  <u>See:</u>  AFGE Constitution, Article III, Section 2.

51.    Plaintiff r*esigned* from the U. S. Social Security Administration after 13 years of employment in February 1989 while he was a member in good standing of AFGE.

52.     After resigning from the federal government, Mr. Hudson withdrew all of his retirement funds and, therefore, was ineligible to <u>retire</u> from the federal government.

53.    Plaintiff did not **retire** from the federal government in February 1989 or thereafter.

54.     In February 1989, AFGE hired Mr. Hudson as an AFGE National Representative.

55.     When he resigned from the federal government in February 1989, Mr. Hudson was no longer a "current government employee" eligible for AFGE membership under Article III, Section 1(b) of the AFGE National Constitution.

56.     However, as permitted by Article III, Section 1(c) of the AFGE National Constitution, even though he was no longer employed by the federal government, Mr. Hudson maintained his AFGE Active membership status while employed *in the private sector* as an AFGE National Representative by continuing to pay his AFGE Active membership dues from February 1989 until December 2013 without a break.

57.     Mr. Hudson paid his AFGE Active Member dues annually in the amount of approximately $450 per year, without a break, every year from February 1989 until December 2013 to his AFGE Local 2452.

58.     In December 2013, Mr. Hudson turned 60 years old, and AFGE Local 2452 converted his membership status from AFGE Active Member to AFGE Retired member status.

59.     After converting Plaintiff from AFGE Active Member to AFGE Retired Member, AFGE Local 2452 reduced Mr. Hudson's annual dues payments from approximately $450 per year to approximately $50 per year (or whatever the reduced AFGE Retired membership dues were at the time).

60.     Additionally, when Mr. Hudson turned 60, Local 2452 began to pay Plaintiff's dues for him as Local 2452 paid the annual dues for all AFGE Local 2452 Retired members.

61.     As an AFGE Retired member, Mr. Hudson was able to vote, attend AFGE meetings, nominate himself for and run for office and retain elected AFGE office as he had while an Active AFGE member.

62.     For example, in August of 2015 Mr. Hudson successfully ran for a second term as the AFGE National Secretary Treasurer as an AFGE Retired member, and he was elected by acclamation.

63.     Mr. Hudson ran for AFGE National President as an AFGE Retired member in August 2018.

64.     Members who, unlike Mr. Hudson,  retired from the federal or District government are governed by Article III, Section 1(b) of the AFGE National Constitution.

65.     Mr. Hudson is not governed by Article III, Section 1 (b) of the AFGE National Constitution because Mr. Hudson did not retire from the federal or District of Columbia government.

66.     Mr. Hudson is not governed by Article III, Section 1 (b) of the AFGE National Constitution because Mr. Hudson retired from AFGE, a private sector employer.

67.     Mr. Hudson was employed by AFGE for nearly 30 years and retired from AFGE, a private sector company.

68.     Therefore, Mr. Hudson's continued membership in AFGE  following his voluntary resignation from the Social Security Administration derives from Article III, **Section 1(c)** of the AFGE National Constitution – _not_ Article III, Section 1(b).

69.     Individuals who joined AFGE while they were current government employees and who retired <u>from the government</u> but did not continue to pay their AFGE dues without a break following their retirement from the government may apply only for "Special Retiree" Affiliate status. <u>See</u>:  AFGE National Constitution, Article XXIV, Section 2.

70.     Unlike an AFGE Retired member, like Mr. Hudson, who pays an AFGE membership fee of $50 a year, a "Special Retiree" pays a reduced  membership fee of $24 per year.

**For 40 Years There Was No Break In Mr. Hudson's Payment Of His
AFGE Membership Dues**

71.     Defendant AFGE maintains a national database of all dues paying AFGE members in good standing on its website in the section entitled "MyLocal."

72.     Whenever AFGE local affiliates admit new members, the AFGE Local affiliate President and/or Secretary Treasurer is authorized to notify AFGE, and, based on the local's notification, AFGE adds the new member's name to the AFGE MyLocal national database.

73.     Typically, AFGE National does not question an AFGE Local affiliate President and/or Secretary Treasurer when they notify AFGE to add new local members through MyLocal.

74.     The AFGE Local 1923 Constitution and Bylaws state at page 13, Section 38 that all active retired members must pay dues of $50 annually and that the dues payment **shall be paid "in advance,** through payroll deduction or through procedures established by the Executive Board." *[Emphasis Added]*  Pursuant to this provision, Mr. Hudson paid his AFGE Local 1923 Retired membership dues in advance for one year in the amount of $50 in September 2018 for the period September 2018 through September 2019.

75.     AFGE Local 1923 (Local 1923) is a registered, autonomous union affiliated with AFGE and organized pursuant to Article XIX of the AFGE National Constitution.

76.     Local 1923 has its own Constitution which incorporates by reference certain standard provisions of the AFGE National Constitution, including the sole right to admit members to Local 1923 without interference from AFGE National.

77.     The duly elected Presidents of Local 1923 for all times relevant to these proceedings were Jack Riismandel for the period January 2018 to December 2018 and Anita Autrey for the period December 2018 to December 2021.

78.     Local 1923 pays a per capita percentage of all dues collected from its members, including Plaintiff Eugene Hudson, to Defendant AFGE.

79.     As a Local 1923 AFGE Retired member, Mr. Hudson pays $50 a year to AFGE Local 1923.

80.     Local 1923 is located in AFGE District 4 which is overseen by AFGE National Vice President Danny Doyle.

81.     Local 3723 is a registered, autonomous union affiliated with AFGE and organized pursuant to Article XIX of the AFGE National Constitution.

82.     Local 3723 has its own Constitution, which incorporates by reference certain standard provisions of the AFGE National Constitution, including the sole right to admit members to Local 3723 without interference from AFGE National.

83.     Local 3723 pays a per capita percentage of all dues collected from its members, including Plaintiff Eugene Hudson, to Defendant AFGE.

84.     As a AFGE Local 3723 Retired member, Mr. Hudson pays $60 a year to AFGE Local 3723.

85.     The duly elected President of Local 3723 for all times relevant to these proceedings is John Morris.

86.     Local 3723 is an autonomous, AFGE Local affiliate that represents approximately 2500 present and former employees of the Navy and Air Force, among others.

87.     Local 3723 is located in AFGE District 12 which is overseen by AFGE National Vice President Mario Campos.

88.     In September 2018, Mr. Hudson transferred his AFGE Retired membership from Local 2452 in California to Local 1923 in Maryland, where he now resides.

89.    On September 24, 2018, in the presence of witnesses, Mr. Hudson, a private sector AFGE retired employee, paid his AFGE Retired member dues in full and in advance for one year in the amount of $50 cash for the period from September 2018 through September 2019 to then-AFGE Local 1923 President Jack Riismandel.

90.    Local 1923 President Jack Riismandel informed Mr. Hudson in September 2018 that by paying $50, Mr. Hudson's AFGE Local 1923 dues were paid in full through September 2019. This was witnessed by Local Vice Presidents Regina Smith and Jerry Bryant.

91.    After accepting Mr. Hudson's dues payment, Local President Riismandel made a motion to the general Local 1923 membership to accept Mr. Hudson as a Local 1923 member for the period September 2018 through September 2019, and the motion passed.

92.    In a generic letter sent to all retired Local 1923 members in January and March of 2019, Autrey stated that in order to maintain membership in Local 1923, all dues must be paid by April 15, 2019.

93.    Mr. Hudson never received the January and March 2019 generic letters from Local 1923 or any emails from Local 1923 notifying him that his Local 1923 dues must be paid by April 15, 2019, as required by the AFGE Dues Delinquency Policy and the AFGE National Constitution.

94.    In April 2019, five months before Mr. Hudson's one-year membership was scheduled for renewal in September 2019, newly elected AFGE Local 1923 President Anita Autrey sent a letter informing Plaintiff that his Local 1923 membership was "irretrievably severed."

95.    AFGE Local 1923 President Anita Autrey violated the AFGE National Constitution, the AFGE Local 1923 Constitution and the June 2017 AFGE NEC Dues Delinquency Policy by failing to send Mr. Hudson written notice via U.S. Postal Service and via email that his dues

were allegedly delinquent before terminating Mr. Hudson's 40-year AFGE union membership and not providing him a reasonable period of time to respond.

96.    Mr. Hudson learned for the first time on April 23, 2019, from Local 1923 Vice President Regina Smith that President Autrey had dropped his AFGE union membership.

97.    Mr. Hudson immediately contacted President Autrey's office and spoke to Barbara Flynn, a Local 1923 staff member, who informed Mr. Hudson that his dues were 8 days late and that his membership was terminated effective April 15, 2019.  He then explained that his dues were paid in full through September 2019.

98.    On April 26, 2019, Mr. Hudson sent a *second* $50 money order to Local 1923 and asked Local 1923 to reinstate his membership.

99.    President Autrey refused to accept Plaintiff's second dues payment on the grounds that the dues payment was due no later than April 15, 2019.  For that reason, Autrey informed Plaintiff she was returning his second union dues payment money order to him uncashed and that his membership was irretrievably severed.

100.    Mr. Hudson sent a *third* $50 dues payment in the form of a U. S. Postal Service money order to Local 1923 in September 2019 to cover the period September 2019 through September 2020.

101.    Again, President Autrey returned the money order to Mr. Hudson uncashed.

102.    Mr. Hudson challenged the December 2018 Local 1923 election of officers, and the U. S. Department of Labor (DOL) agreed to run a new DOL-supervised election in December 2019.

103.    Mr. Hudson nominated himself to run for the position of Local 1923 President in the DOL-supervised election, and Anita Autrey ran for the same position.

104.    Because Autrey had returned Mr. Hudson's dues payments, AFGE National and Local 1923 refused to recognize Mr. Hudson as a candidate in the DOL-supervised election.

105.    On June 17, 2019, Plaintiff appealed LP Autrey's decision to then-AFGE National President J. David Cox.

106.    On June 25, 2019 Cox denied Plaintiff's appeal stating that all AFGE locals are autonomous.

107.    Cox asserted in the June 25, 2019 letter that "the AFGE National Constitution, Article III, Section 2 does not empower the AFGE National President to countermand local membership decisions."

108.    Mr. Hudson filed a motion for a preliminary injunction in related Case 19-2738 asking this Court to order DOL to refrain from holding the DOL-supervised Local 1923 election of officers until his name was added to the ballot.

109.    In related Case 19-2738, *Hudson v. AFGE et al.* (JEB)  DOL asked this Court for leave to conduct a two-week investigation.

110.    Following the two-week investigation, DOL overruled  Local 1923 President Anita Autrey and determined that Mr. Hudson had indeed timely paid his annual AFGE Retired membership dues in the amount of $50 in full to the Local for the period September 2018 through September 2019.

111.    Specifically, DOL Director of Field Operations Stephen J. Willertz issued a sworn affidavit stating that DOL's investigation determined that Mr. Hudson had timely and fully paid his dues in September of 2018 in advance for the period September 2018 through September 2019, after finding that:

> "AFGE Local President Jack Riismandel accepted $50 in annual Regular Retiree dues from Mr. Hudson in September 2018, and Mr. Riismandel informed Mr. Hudson

that the $50 dues payment was good for one full year, witnessed by then Vice Presidents Jerry Bryant and Regina Smith."

112.    Defendant AFGE and NST Bunn informed Local 3723 President John Morris that they would not list Mr. Hudson as a Retired member of Local 3723 because Local 1923 President Anita Autrey had previously ruled that Mr. Hudson's membership had lapsed for nonpayment of dues effective April 2019.

113.    Defendant AFGE and NST Bunn informed Local 3723 President John Morris and Plaintiff that the purported "lapse" in Mr. Hudson's dues payments reported by Autrey rendered Mr. Hudson ineligible of being listed as a Retired member in the AFGE National MyLocal database.

114.    Plaintiff informed Defendant AFGE and NST Bunn that Autrey was incorrect because there was no "lapse" in his AFGE dues payments.

115.    As proof there was no lapse in his AFGE dues payments, Mr. Hudson sent NST Bunn a copy of the Declaration under Penalty of Perjury filed by U. S. DOL Director Stephen Willertz in related Case 19-2738, *Hudson v. AFGE* (JEB) in which Director Willertz averred to this Court that DOL had, in fact, investigated the matter of Mr. Hudson's Local 1923 dues status.

116.    DOL Director Willertz informed this Court, Plaintiff, and Defendant AFGE that DOL determined, contrary to Autrey's findings,  that Mr. Hudson had timely and fully paid his AFGE Retired membership dues for one year from September 2018 through September 2019.  Thus, DOL concluded that there was no break or lapse in Mr. Hudson's AFGE dues payments.

117.    Despite clear evidence from DOL's investigation in related Case 19-2738 that there was no break in Mr. Hudson's dues payments and that Mr. Hudson's dues were timely and fully paid through September 2019, Defendant AFGE and NST Bunn have refused AFGE Local 3723's request to add Mr. Hudson as a Retired AFGE Local 3723 member to date.

118.    Despite clear evidence from DOL's investigation in related Case 19-2738 that there was no break in Mr. Hudson's dues payments and that Mr. Hudson's dues were timely and fully paid through September 2019, Defendant AFGE and NST Bunn refused to allow Mr. Hudson the right to vote and to run for AFGE elected office in the September 2020 District 12 Caucus.

119.    Despite clear evidence from DOL's investigation in related Case 19-2738 that there was no break in Mr. Hudson's dues payments and that Mr. Hudson's dues were timely and fully paid through September 2019, Defendant AFGE and NST Bunn have stated that AFGE will refuse to allow Mr. Hudson the right to vote and to run for AFGE elected office in the upcoming June 2022 National Convention.

120.    Despite clear evidence from DOL's investigation in related Case 19-2738 that there was no break in Mr. Hudson's dues payments and that Mr. Hudson's dues were timely and fully paid through September 2019, Defendant AFGE and NST Bunn refuse to allow Mr. Hudson the right to vote, attend AFGE meetings, access the AFGE membership website, and run for AFGE elected office because, according to  AFGE,  Local President Anita Autrey ruled that there was a "lapse" in Plaintiff's dues payments.

121.    In a letter to Plaintiff, dated September 18, 2020, NST Bunn stated that "while it appears that Local 3723 attempted to make its action on your membership retroactive, the National Constitution makes no provision for such actions."

122.    Asserting that the AFGE National Constitution makes "no provision" for retroactive memberships,  AFGE claims Plaintiff is an AFGE Special Retiree member under Article III, Section 1(d), and, therefore, as a Special Retiree, Mr. Hudson is prohibited from voting, attending NEC meetings and running for office.

123.    This ruling is incorrect because Article III, Section 1(d) of the AFGE National

Constitution describing "Special Retiree affiliates" applies only to **current** federal and District of

Columbia employees defined under Article III, Section 1(b), whose AFGE membership has

lapsed for nonpayment of dues.

124.    Mr. Hudson is not a current federal  or District of Columbia government employee, and,

therefore, Article III. Section 1(d) of the AFGE National Constitution describing "Special

Retiree affiliates" does not apply to him.  The only section that applies to private sector

employees like Mr. Hudson is Article III, Section 1(c).

125.    AFGE and NST Bunn did not treat2, a similarly situated Caucasian American AFGE

member of Local 3669 in the manner it treated Mr. Hudson who is African American.

126.    AFGE and NST Bunn permitted Barbara Galle to maintain her AFGE membership in

Local 3669 and run for two offices after Ms. Galle did not pay her AFGE membership dues for

two years. *(See Exhibit 2: Declaration of Barbara Galle, dated November 18, 2021)*

127.    Defendant AFGE National Finance Department staff member Kanisha

Cunningham's job includes processing the per capita dues owed to Defendant AFGE from

its AFGE local affiliates' members.

128.    On June 28, 2019, at 12:21 p.m., AFGE National Finance staff member Kanisha

Cunningham sent an email to AFGE District 8 National Vice President (NVP) Gregg James

with a copy to AFGE National Finance Department official Syed Faisal and AFGE Local

3669 Secretary Treasurer Karen Rafter notifying them that Defendant AFGE's per capita

dues records reflect that "Local 3669 President Barbara Galle was recently dropped by the

AFGE tape dues deduction process" for nonpayment of her AFGE membership dues.

129.   Having been dropped for nonpayment of dues, Ms. Cunningham stated in her email of June 28, 2019 to NVP Gregg James, that AFGE National should have "inactivated" Barbara Galle as both an officer and as a member of AFGE.

130.   In the same email, Kanisha Cunningham informed NVP Gregg James that because Ms. Galle had not paid her local AFGE membership dues, AFGE National had "inactivated Barbara Galle as Local 3669 President."

131.   Ms. Cunningham asked NVP Gregg James:  "If this is incorrect, and Ms. Galle needs to be reinstated, please let us know, and we will correct this or please let us know when the Local elects/appoints a new President."

132.   By stating that AFGE National had "inactivated Barbara Galle as Local President for nonpayment of dues," Ms. Cunningham was saying that AFGE National had suspended Galle as Local President for nonpayment of her Local 3669 membership dues.

133.   AFGE National Finance employee Kanisha Cunningham asked NVP Gregg James to advise AFGE National Finance Department whether Barbara Galle should be reinstated to her position as Local 3669 President, despite the fact that AFGE National's records showed that Ms. Galle had not paid her membership dues.

134.   After receiving the Cunningham email, President Barbara Galle and Rafter, as Local 3669 Treasurer, were responsible for  making certain that Ms. Galle's dues, like all Local 3669 members, were timely paid to the local and to AFGE National.  They did not.

135.   On the same date, June 28, 2019, at 1:45 p.m., NVP Gregg James responded to Kanisha Cunningham with a copy to Syed Faisal and the Local 3669 Treasurer Karen Rafter: "This is incorrect. Barbara is the Local President.  She is on OWCP (Office of Workers Compensation Programs) from her federal position but remains the local president."

136.    This is incorrect.  Ms. Galle was still required to pay her AFGE dues while receiving workers' compensation.

137.    On June 28, 2019, at 1:52 p.m., AFGE National Finance staff employee Kanisha Cunningham thanked NVP James for his response and agreed to "activate Ms. Galle back into her position."

138.    After NVP Gregg James intervened on Barbara Galle's behalf, Defendant AFGE and NST Bunn reinstated Barbara Galle to her position of Local 3669 President even though Defendant AFGE and NVP Gregg James were aware that Ms. Galle had not paid her AFGE Local 3669 membership dues for months.

139.    On June 28, 2019, Defendant AFGE, NVP Gregg James, and AFGE National Finance staff member Kanisha Cunningham did not remove Barbara Galle as an AFGE member in good standing in the AFGE National MyLocal database of  members, despite the fact that Defendant AFGE and NVP James were aware that Ms. Galle's AFGE membership dues had not been paid for months.

140.    At the direction of Defendant AFGE NVP Gregg James, AFGE employee Kanisha Cunningham did not remove Ms. Galle from the AFGE National MyLocal database of AFGE members in good standing despite the fact that Defendant AFGE, NVP Gregg James, Local 3669, and AFGE Finance staff employee Kanisha Cunningham were fully aware that Ms. Galle's AFGE membership dues had not been paid for months.

141.    In May 2020, Defendant AFGE and NST Bunn permitted AFGE Local 3669 member Barbara Galle to declare her candidacy and run for the position of AFGE Local 3669 President and vote in the Local 3669 election, despite the fact that Ms. Galle had not paid her AFGE Local 3669 membership dues since July 2019.

142.    Ms. Galle was elected to the position of AFGE Local 3669 President in the May 2020

Local 3669 election even though her AFGE membership dues remained unpaid.

143.    Four months later, in September 2020,  Defendant AFGE National, AFGE District 8

National Vice President Gregg James and NST Bunn permitted Barbara Galle to run for a

*second* position of President of the National Veteran Administration Council (NVAC)

representing 12 NVAC locals of AFGE Council 259, even though Ms. Galle had not paid her

Local 3669 membership dues for months.

144.    Ms. Galle was elected to the position of President of the NVAC Council 259, District

8, in the September 2020 AFGE Council 259 election.

145.    Four months after Mr. Hudson paid his Local 1923 dues in full for one year for the

period September 2018 through September 2019, Defendant AFGE removed Plaintiff

Eugene Hudson as a member from the AFGE National MyLocal database of AFGE

members based on Local 1923 President Anita Autrey's erroneous assertion that Mr.

Hudson was late in paying his Local 1923 membership dues.

146.    By contrast, when Ms. Galle did not pay her dues for months,  AFGE Finance staff

member Kanisha Cunningham contacted the District 8 National Vice President Gregg James

and asked the NVP to clarify whether AFGE National should continue to recognize Barbara

Galle as the Local President or whether there would be a new election or new appointment.

147.    Defendant AFGE intervened and permitted Ms. Galle to continue to be an AFGE

member in good standing with no lapse in her membership even though Ms. Galle, at that

point, had not paid her dues **for nearly two years.**

148.    Unlike AFGE's harsh and unfair treatment of Plaintiff whose membership AFGE

irretrievably severed on April 15, 2019, during the period that DOL determined Mr.

Hudson's due were paid in full, after Ms. Galle failed to pay her dues for nearly two years, AFGE did **not** "irrevocably sever" Ms. Galle's membership for nonpayment of dues.

149.    AFGE did not prohibit Ms. Galle from being a candidate for AFGE Local and Council offices, and AFGE did not prohibit Ms. Galle from serving in two elected positions despite the fact that she had not paid her AFGE dues for two years.

150.    After ordering AFGE National Finance staff employee Kanisha Cunningham to reinstate Ms. Galle's membership, NVP Gregg James ordered that Ms. Galle would be allowed to *retain* her elected position as AFGE Local President despite the fact that Ms. Galle had not paid her AFGE membership dues for two years.

151.    Ms. Galle is Caucasian American.

152.    Unlike AFGE's more favorable treatment of Ms. Galle, who is Caucasian American, no member of the AFGE National Finance Department contacted Mr. Hudson or AFGE District 4 National Vice President Danny Doyle to request clarification on whether AFGE National should continue to recognize Mr. Hudson, who is African American, as a member in good standing of Local 1923 after President Autrey erroneously terminated his AFGE membership for nonpayment of dues in April 2019.

153.    Although AFGE local affiliates are autonomous and have sole authority to determine the membership status of their members, the communication between NST Bunn, AFGE National Finance staff member Kanisha Cunningham and NVP Gregg James establishes that Defendant AFGE and the AFGE National Vice Presidents have legal authority under the AFGE National Constitution and past practices to intervene to prevent a local affiliate from erroneously removing an AFGE member and an AFGE officer for nonpayment of AFGE membership dues and for violating the AFGE Dues Delinquency Policy.

154.    Local 1923 President Anita Autrey violated the June 2017 AFGE NEC Dues Delinquency Policy, the AFGE National Constitution and the LMRDA by dropping Plaintiff as an AFGE Retired member in good standing of Local 1923 in April 2019.

155.    Defendant AFGE violated the AFGE Dues Delinquency Policy, the AFGE National Constitution, the LMRDA, the LMRA, 42 U.S.C. 1981, and Title VII of the Civil Rights Act of 1964 by refusing to intervene (as AFGE intervened in the case of Barbara Galle) and overrule Local President Anita Autrey's erroneous decision to 'irretrievably sever" Plaintiff as an AFGE Retired member in good standing of Local 1923 in January 2019.

156.    This Court has jurisdiction to hear Mr. Hudson's complaint that his membership was unlawfully terminated by Defendant AFGE because Mr. Hudson is a Retired Member of AFGE, a private sector employer and because AFGE is a mixed union subject to the LMRDA.

157.    On March 10, 2020, Plaintiff Eugene Hudson sent an email to newly-appointed AFGE National President Everett Kelley and AFGEGeneral Counsel David Borer appealing the February 2020 decision by former AFGE Deputy General Counsel Gony Goldberg that Mr. Hudson was no longer an AFGE member because Local 1923 had dropped his membership for nonpayment of dues.

158.    In the March 10, 2020 email, Mr. Hudson  also announced his candidacy for the position of AFGE District 12 NVP – an election originally scheduled to be held in May of 2020 and rescheduled to September 2020 due to the COVID-19 pandemic.

159.    On March 24, 2020, Arla Bentley sent an email informing Mr. Hudson that he was not eligible to run for District 12 NVP because he was not a member of any AFGE  local and because "Local 1923 had dropped Mr. Hudson's membership for nonpayment of dues."

160.    AFGE's conclusion that Plaintiff is not a member of any AFGE local because Local 1923 had dropped Mr. Hudson's membership for "nonpayment of dues" is incorrect because the U. S. Department of Labor concluded that Mr. Hudson timely paid his AFGE Local 1923 dues in full for one year (from the period September 2018 through September 2019).

161.    In September 2019, Mr. Hudson attempted to pay his AFGE Retired Member dues for the period September 2019 through September 2020 by sending a U. S. Postal Service money order for $50 by certified mail to Local 1923.  However, AFGE. Local 1923 returned the  Mr. Hudson's September 2019 $50 money order to Mr. Hudson uncashed.

162.    Aware of DOL's determination that Mr. Hudson had timely and fully paid his membership dues to AFGE Local 1923 and aware that Mr. Hudson had attempted to pay his AFGE Retired Member dues in September 2019 for the period September 2019 through September 2020 without a break in service, on August 22, 2020, AFGE Local 3723 members determined that Mr. Hudson is "an asset to our Federation." *(See Exhibit 3: Declaration of Local 3723 President John Morris, dated November 15, 2021)*

163.    The same date, August 22, 2020, AFGE Local 3723 members unanimously voted to admit Mr. Hudson as an AFGE Retired member in good standing with no break in membership and with all attendant rights, including the right to run for office, vote, and exercise all membership rights of other AFGE members retroactive to April 2019, the date that Local 1923 erroneously terminated Mr. Hudson's 40-year AFGE membership.

164.    AFGE Local 3723 President John Morris sent an August 22, 2020 email informing then-District 12 National Vice President George McCubbin that Local 3723 members had unanimously voted to admit Mr. Hudson as a Retired member with no break in service.

165.    President Morris informed McCubbin that he and the Local 3723 Treasurer had attempted, unsuccessfully, to contact AFGE National Finance officials Jeanne Che and Syed

Faisal (both of whom supervise Kanisha Cunningham) to ask them to add Mr. Hudson as an AFGE Retired member of the local retroactive to April 1, 2019.  President Morris asked NVP McCubbin to assist Local 3723 in doing so.

166.    NVP Gregg James promptly intervened and, *without going through Finance Department supervisors Jeanne Che and Syed Faisal,* NVP James ordered AFGE National Finance staff member Kanisha Cunningham to reinstate Barbara Galle's AFGE membership after AFGE National Finance staff member Kanisha Cunningham had properly terminated Ms. Galle's AFGE membership for nonpayment of dues.

167.    However, NVP McCubbin ignored Local President John Morris' August 22, 2020 request to reinstate Mr. Hudson's membership after AFGE wrongfully terminated Plaintiff's membership for nonpayment of dues.

168.    After NVP McCubbin refused to intervene, on September 8, 2020, Plaintiff appealed to AFGE National Secretary-Treasurer (NST) Eric Bunn Arla Bentley's March 24, 2020 decision that Plaintiff could not run for the position of District 12 NVP because he had not timely paid his dues and was not a member of AFGE.

169.    NST Bunn responded that Mr. Hudson was ineligible to be an AFGE  Retired member because Local 1923 had dropped him for nonpayment of dues in April 2019 and refused to accept his late dues payments.

170.    NST Bunn also told Mr. Hudson that the AFGE National Constitution makes no provision for AFGE Locals to make membership retroactive.

171.    The AFGE Constitution permits AFGE National and its local affiliates to retroactively admit members.

172.    AFGE District 8 National Vice President Gregg James, with the approval of NST Eric Bunn, directed AFGE National and  Local 3669 to retroactively reinstate Barbara

Galle's AFGE membership after AFGE National Finance staff member Kanisha

Cunningham terminated Ms. Galle's  AFGE membership after Ms. Galle failed to pay her

membership dues for two years.

173.    Two years *after* AFGE National Finance staff member Kanisha Cunningham

terminated Barbara Galle's AFGE membership in July 2019, Ms. Cunningham sent another

July 2021 email to Local President Galle informing Ms. Galle that she had not paid her

AFGE dues.

174.    In the July 1, 2021 email, Ms. Cunningham did **not** tell Ms. Galle that AFGE

National was dropping Ms. Galle as an AFGE member or as an AFGE officer due to Ms.

Galle's nonpayment of AFGE dues.

175.    In the July 1, 2021 email,  Ms. Cunningham did **not** tell Ms. Galle that her AFGE

membership was irretrievably severed for nonpayment of dues and that Ms. Galle could not

vote, hold or run for office.

176.    Ms. Galle had not paid her AFGE dues for two years. Yet, in a July 6, 2021, 7:47 a.m.

email to Barbara Galle, NVP Gregg James stated:  "If you read my response, all I stated is

you are still the Local President.  The sentence reads they changed the status after I told them

you're still the Local  President on July 30, 2019, changing your pay group back to manual

per NVP Gregg James' notice you were on OWCP but would remain a local officer."

177.    Three months after AFGE assured Ms. Galle that she was still the Local President

despite not having paid her AFGE dues for two years, on October 22, 2021, Barbara Galle

wrote an email to AFGE National Secretary Treasurer Eric Bunn requesting forgiveness of

her debt as she was never notified.

178.    On October 22, 2021, NST Bunn responded to Ms. Galle, stating that he was under

the impression she was on OWCP.

179.    On October 23, 2021, at 12:56 p.m. (1:56 p.m. EST), Barbara Galle wrote to NST Bunn and Syed Faisal:  "Good morning, I am unclear what that has to do with my asking for National to forgive the debt.  I am requesting a yes or a no, so that I may proceed with asking the Local to assist my paying this.  Syed, are you able to tell me what is owed? Thank you."

180.    On October 25, 2021, at 8:58 a.m. Syed Faisal sent an email to Local 3669 President Galle and NST Eric Bunn:  "Good Morning Local President Galle, if this is in reference to your membership dues during the time you were on leave, please see image below.  There are 10 pay periods (highlighted in yellow) where no dues were received."

181.    AFGE National staff member Syed Faisal sent Ms. Galle an October 25, 2021 email containing a ledger highlighting ten pay periods from May 30 to July 13, 2019 and May 25, 2019 through August 31, 2019 that Ms. Galle had not paid her AFGE membership dues.

182.    The AFGE ledger sent by Mr. Faisal to Ms. Galle does not reflect any dues owed or paid by Ms. Galle for the years 2020 or 2021.

183.    On November 5, 2021, 10:13 a.m. Barbara Galle sent an email to Syed Faisal and NST Eric Bunn stating: "Good Morning, I'm trying to figure out the dollar amount I owe. Based on below you are saying there was nothing missed in 2020.  Thank you."

184.    On November 5, 2021, 10:50 a.m. Syed Faisal sent an email to Barbara Galle with a copy to NST Bunn:  "Correction the amount is $142.50."

185.    On November 5, 2021, 11:49 a.m., Syed Faisal sent an email to Barbara Galle with a copy to NST Eric Bunn:  "As per my last email, our records show 10 pay periods with zero deductions.  Your current dues amount is $14.25 per pay period so that would be $142.50. Regards, Syed."

186.    After NST Eric Bunn and NVP Gregg James intervened, in November 2021 Defendant AFGE allowed Ms. Galle to pay her unpaid membership dues **retroactively**.

187.    However, a year earlier in a September 18, 2020 letter from  NST Bunn to Eugene

Hudson, Defendant AFGE stated that "while it appears that Local 3723 attempted to make its

action on your membership retroactive, the National Constitution makes no provision for such

actions."

188.    This is not true.  There are many other instances in which autonomous AFGE local

affiliates have retroactively reinstated AFGE members, like Ms. Galle, after their membership

lapsed for nonpayment of dues.

189.    For example, citing the June 2017 AFGE NEC Dues Delinquency Policy, then-District 14

NVP Eric Bunn and then-National President J. David Cox intervened and ordered autonomous

AFGE Local 2741 to *retroactively* reinstate the AFGE memberships of Tara Blunt and Devlin

Hillman after their local president wrongfully refused to accept their dues payments for months

in violation of the AFGE Dues Delinquency Policy and the AFGE National Constitution.

190.    Defendant AFGE,  NST Eric Bunn and NVP Gregg James intervened and permitted

Barbara Galle to pay her AFGE membership dues *retroactively*.

191.    Defendant AFGE,  NST Eric Bunn and NVP Gregg James intervened and permitted

Barbara Galle to retain **two** AFGE elected offices that Ms. Galle ran for and won <u>while</u> her

AFGE dues were *not* paid – AFGE Local 3669 President and AFGE Council 259 President.

192.    The U. S. Department of Labor determined that AFGE Local 1923 President Anita

Autrey erroneously "irretrievably severed" Plaintiff Eugene Hudson's 40-year AFGE

membership for nonpayment of dues at a point when Mr. Hudson's dues were paid in full.

193.    Defendant AFGE and NST Eric Bunn are aware of DOL's finding that Mr. Hudson paid

his dues in full to Local 1923.

194.    Yet, Defendant AFGE and NST Eric Bunn did not intervene and permit Mr. Hudson

to run for office *after* DOL informed Defendant AFGE, Plaintiff and this Court that Mr.

Hudson had fully and timely paid his dues to Local 1923 for the period September 2018 through September 2019 with no break in service.

195.    Unlike Defendant AFGE's favorable and prompt actions in retroactively reinstating Barbara Galle's AFGE membership after Ms. Galle's membership was terminated for nonpayment of dues, Defendant AFGE refused to intervene on Mr. Hudson's behalf and reinstate his Retired membership status after the U. S. Department of Labor determined that Local 1923 President Autrey had erroneously and deliberately severed Plaintiff's 40-year membership in April 2019.

196.    Defendant AFGE permitted Ms. Galle to run for two AFGE offices even though she had not paid her AFGE membership dues for two years.

197.    However, Defendant AFGE  refused to permit Mr. Hudson to run for office in the 2020 District 12 election and has recently refused to permit Mr. Hudson to run for office in the upcoming June 2022 National Convention after falsely alleging that Mr. Hudson was eight days late paying his AFGE membership dues in April 2019.

198.    Defendant AFGE, NST Eric Bunn, and NVP Danny Doyle *adopted* Autrey's false assertion that Mr. Hudson had not paid his dues and used that as a pretext to convert Mr. Hudson's AFGE Retired membership to Special Retiree status to render Mr. Hudson ineligible to run for AFGE elected office in the September 2020 District 12 Caucus and in the upcoming June 2022 AFGE National Convention.

199.    Defendant AFGE, NST Eric Bunn and NVP Danny Doyle refused to reinstate Plaintiff's AFGE Retired membership status after the U. S. Department of Labor investigation concluded that Mr. Hudson had timely and fully paid his AFGE Retired membership dues to AFGE Local 1923.

200.    NST Bunn and NVP Doyle were biased against NST Hudson because they retaliated

against Mr. Hudson by twice voting to remove NST Hudson from office in August 2017 and in

February 2018 after NST Hudson properly questioned expense vouchers submitted for

reimbursement by certain NEC officials and then-AFGE National President Cox.

201.    Defendant AFGE and its officials discriminated against Mr. Hudson, who is African

American, on the basis of his race and violated his rights under the Labor Management

Reporting and Disclosure Act (LMRDA), the Labor Management Relations Act (LMRA), the

AFGE National Constitution, the AFGE Dues Delinquency Policy, by treating him in a racially

disparate manner than it treated similarly situated AFGE member Barbara Galle, who is

Caucasian American.

202.    Defendant AFGE and its officials protected AFGE member Barbara Galle's rights under

the Labor Management Reporting and Disclosure Act (LMRDA), the Labor Management

Relations Act (LMRA), the AFGE National Constitution, the AFGE Dues Delinquency Policy

and the AFGE Local 3669 Constitution, by retroactively accepting Ms. Galle's dues payments

after Defendant AFGE National staff terminated Ms. Galle's AFGE membership because she

had not paid her AFGE membership dues for two years.

203.    During the two years that Ms. Galle failed to pay her AFGE dues, Defendant AFGE, NST

Bunn, and NVP Gregg James did not check Ms. Galle's membership dues status; rather, they

permitted Ms. Galle to run for two AFGE offices without paying her AFGE membership dues.

204.    By contrast, Defendant AFGE, NST Bunn, and NVP Doyle not only checked Mr.

Hudson's candidacy, they wrongfully determined that his membership dues were not paid to

Local 1923, wrongfully asserted without any evidence that Mr. Hudson's 40-year AFGE

membership was "irretrievably severed," and unlawfully denied Plaintiff the right to run for the

position of NVP in the September 2020 AFGE District 12 Caucus based on AFGE National's adoption of Local 1923 President Anita Autrey's erroneous assertion that Mr. Hudson's Retired membership was "irretrievably severed" for nonpayment of dues.

205.    From April 2019 to date, Defendant AFGE wrongfully removed Plaintiff Eugene Hudson as a Retired AFGE member and deleted his name from the AFGE National MyLocal membership dues database.

206.    From April 2019 to date, Defendant AFGE has unlawfully denied Plaintiff Eugene Hudson the right to attend NEC meetings, vote, run as a candidate in AFGE elections and blocked Mr. Hudson's access to the AFGE national *MyLocal* Membership portal – rights available to all AFGE members, including Barbara Galle.

207.    Defendant AFGE, National President Everett Kelley, and NST Bunn recently denied Mr. Hudson's self-nomination to run for the position of AFGE National President in the upcoming June 2022 AFGE national convention based on their adoption of AFGE Local 1923 President Anita Autrey's erroneous assertion that Mr. Hudson's Retired AFGE membership was "irretrievably severed" for nonpayment of dues.

208.    Defendant AFGE based its decision to remove Plaintiff on Local 1923 President Autrey's erroneous assertion that Mr. Hudson had allegedly failed to pay a mere $50 annual Retired member dues payment – after the U.S. DOL investigated the allegation and informed this Court, Plaintiff and Defendant AFGE that Local 1923's assertion was erroneous in related Case 19-2738.

209.    By contrast,  during the two years that Barbara Galle did not pay her AFGE membership dues, Defendant AFGE permitted Ms. Galle to attend NEC meetings, vote, run as a candidate in

AFGE elections, and during that two-year period, Defendant AFGE did not block Ms. Galle's

access to the AFGE national *MyLocal* Membership portal

210.    Defendant AFGE and its officials racially discriminated against Mr. Hudson, who is

African American, by treating Mr. Hudson in a racially disparate and unfavorable manner by

stripping Mr. Hudson of his 40-year AFGE membership status and refusing to allow him to run

for AFGE elected office for allegedly not paying his dues for a short eight day period, while

permitting similarly situated AFGE member Barbara Galle, who is Caucasian American, to

maintain her AFGE membership, retroactively pay her unpaid AFGE membership dues and run

for two elected AFGE offices during the two-year period that  her AFGE membership dues were

not paid.

211.    By treating Mr. Hudson in a racially disparate manner than it treated Ms. Galle,

Defendant AFGE discriminated against Plaintiff on the basis of his race in violation of Title VII

of the Civil Rights Act of 1964 and 42 U.S.C. 1981.

212.    This is not the first time that AFGE has been found to have racially discriminated against

Mr. Hudson.

213.    In June 2021, following a six-day trial in related case 17-2094 *Hudson v. AFGE  (JEB)*,

an eight-person federal jury, after only two hours' deliberation,  found that Defendant AFGE

racially discriminated against Mr. Hudson on the basis of his race by stripping then-NST Hudson

of two major departments under his authority.

214.     The jury awarded Mr. Hudson damages in the amount of $100,000.

215.    Defendant AFGE violated Plaintiff's civil rights protected under 42 U.S.C. 1981 and

Title VII of the Civil Rights Act of 1964 by stripping Mr. Hudson of his union membership and

refusing Local 3723's request to retroactively reinstate Mr. Hudson's wrongfully terminated

AFGE membership, and Defendant AFGE took these actions in a racially disparate manner as compared with  AFGE's more favorable treatment of Barbara Galle.

216.    Defendant AFGE violated Mr. Hudson's rights guaranteed by the LMRDA, the LMRA, the AFGE National Constitution and the AFGE Local 3723 Constitution by refusing to accept Local 3723's retroactive reinstatement of Mr. Hudson's AFGE membership based on the U. S. Department of Labor's independent investigation and finding that Mr. Hudson has timely and fully paid his AFGE membership dues to AFGE Local 1923.

### IV.  DEFENDANT AFGE'S LIABILITY

### COUNT 1
### AGAINST DEFENDANT AFGE
### FOR VIOLATING PLAINTIFF'S RIGHTS GUARANTEED BY
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,
### 42 USC 1981 AND THE DISTRICT OF COLUMBIA HUMAN RIGHTS  ACT

217.    Plaintiff realleges and incorporates all prior paragraphs and paragraphs in the counts below as though set forth fully herein.

218.    Title VII of the Civil Rights Act of 1964, Section 2000(e)(2)(c) makes it unlawful for a labor organization to exclude or expel from its membership, or otherwise to discriminate against any individual because of his race, color, religion, sex or national origin.

219.    Title VII also prohibits an individual or labor organization to engage in racially disparate treatment of a person.

220.    42 U.S.C. 1981 outlaws discrimination on the basis of race.

221.    Defendant AFGE's refusal to include Plaintiff among the list of Local 3723 members in good standing,  AFGE's refusal to accept Mr. Hudson's candidacy for the AFGE District 12 NVP election,  and AFGE's most recent refusal to permit Mr. Hudson to run for office in the

upcoming June 2022 National Convention after falsely alleging that Mr. Hudson was eight days late paying his AFGE membership dues in April 2019 is a racially discriminatory decision.

222.    Defendant AFGE and its officers, AFGE President Everett Kelley, NST Eric Bunn, and NVP Gregg James, allowed a similarly situated AFGE member, Barbara Galle, who is Caucasian American, to run for and hold **two** AFGE elected offices when AFGE knew that Ms. Galle had not paid her AFGE membership dues for two years.

223.    AFGE National is liable for the actions of its officers under the doctrine of *respondeat superior* liability.

224.    AFGE Local 3723, an autonomous AFGE affiliate, voted to accept Plaintiff as a member in good standing and accepted Plaintiff's AFGE dues payments retroactive to the April 2019 date that AFGE Local 1923 erroneously terminated Mr. Hudson's AFGE membership for nonpayment of dues.

225.    Defendant AFGE rejected Local 3723's vote to retroactively admit Mr. Hudson as an AFGE Retired member with the right to enjoy all benefits of AFGE membership accorded to Barbara Galle and other AFGE National and AFGE Local 3723 members, including the right to vote, nominate himself and run for office.

226.    Defendant AFGE refused to accept Local 3723's vote to admit Mr. Hudson, who is African American, as an AFGE Retired member in good standing purportedly because Mr. Hudson did not pay his dues to AFGE Local 1923.  This was mere pretext because Defendant AFGE is aware that the U. S. Department of Labor investigated and determined that Mr. Hudson had fully and timely paid his dues to Local 1923.

227.    Unlike its treatment of Mr. Hudson, Defendant AFGE, NST Eric Bunn and NVP Gregg James **retroactively** reinstated Barbara Galle, who is Caucasian American, as an AFGE member

after permitting Ms. Galle to run for two elected AFGE at a time when Defendant AFGE was aware that Ms. Galle had not paid her AFGE union dues for two years

228.    Defendant AFGE racially discriminated against Mr. Hudson and treated him in a racially disparate manner as compared with AFGE's more favorable treatment of Ms. Galle, thereby unlawfully denying Plaintiff the right to vote, attend AFGE meetings, and exercise his right to be nominated for and run for elected AFGE office in violation of Title VII and 42 U.S.C. 1981, federal and District of Columbia Human Rights Act.

229.    Defendant AFGE refused to admit Mr. Hudson as a member in good standing for racially discriminatory and racially disparate reasons in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 1981 and the D. C. Human Rights statute.

230.    Additionally, AFGE National breached its duty of fair dealing and its contract with Plaintiff under D. C. common law.

231.    Defendant AFGE's unlawful and racially discriminatory actions have caused Plaintiff mental anguish and humiliation and have had a chilling effect on Plaintiff's federally protected civil rights.

232.     Thus, AFGE is liable for damages that Plaintiff has suffered as a result of its actions.

**COUNT 2**
**AGAINST DEFENDANT AFGE,**
**VIOLATION OF PLAINTIFF'S RIGHTS PROTECTED UNDER**
**THE LMRDA AND THE LMRA**

233.    Plaintiff realleges and incorporates all prior paragraphs and paragraphs in the counts below as though set forth fully herein.

234.    After accepting  Plaintiff's dues payments, AFGE Local 3723 transferred Plaintiff's membership from Local 1923 to Local 3723 as an AFGE Retired member in good standing of AFGE National and AFGE Local 3723 with full benefits.

235.    All AFGE local affiliates are autonomous.

236.    AFGE Local 3723 is an autonomous AFGE affiliate.

237.    AFGE Local 1923 is an autonomous AFGE affiliate.

238.    AFGE Local 3669 is an autonomous AFGE affiliate.

239.    AFGE Local 2741 is an autonomous AFGE affiliate.

240.    All AFGE local affiliates have the right to admit members of their choosing under the

terms of their local constitutions.

241.    Many AFGE local affiliates have admitted members into their local affiliates

retroactively.

242.    Plaintiff is a member in good standing of AFGE Local 3723.

243.    Defendant AFGE permitted Barbara Galle to be retroactively readmitted to AFGE Local

3669 with no break in membership after Ms. Galle failed to pay her AFGE membership dues to

Local 3669 for two years.

244.    Citing Local 1923's status as an autonomous local affiliate, Defendant AFGE, through

the actions of then-AFGE National President  J. David Cox, AFGE National President Everett

Kelley and AFGE NST Eric Bunn, ratified Local 1923 President Anita Autrey's wrongful

decision to "irrevocably sever" Mr. Hudson's 40-year AFGE membership for nonpayment of

dues in violation of the LMRDA, the LMRA, the AFGE National Constitution, and the Local

1923 Constitution.

245.    Defendant AFGE adopted Local 1923 President Autrey's April 2019 decision to

irrevocably sever Mr. Hudson's AFGE membership for nonpayment of dues even though

Defendant AFGE was fully aware of  U. S. Department of Labor Director of Operations Steven

Willertz's determination, following a two-week investigation by DOL, that Plaintiff Eugene

Hudson had fully paid his dues to Local 1923 for the period September 2018 through September 2019.

246.    AFGE Local 3723, an autonomous AFGE local affiliate, attempted to correct the unfair termination of Mr. Hudson's membership by retroactively admitting Mr. Hudson as an AFGE Local 3723 Retired member in good standing.

247.    However, AFGE National denied AFGE Local 3723 the right as an autonomous local affiliate to add Plaintiff as a Local 3723 Retired member retroactively in violation of the AFGE National Constitution and in violation of the Local 3723 Constitution.

248.    After accepting its per capita share of Plaintiff's dues payments to Local 3723 AFGE National denied Plaintiff and Local 3723 the right to add Plaintiff's name to the AFGE national *MyLocal* website as an AFGE Retired member in good standing of Local 3723, a right granted to all similarly situated AFGE members, and AFGE did so in violation of the AFGE National Constitution, the AFGE Dues Delinquency Policy, the LMRDA Bill of Rights and the LMRA.

249.    Defendant AFGE retroactively reinstated Barbara Galle, who is Caucasian American, after AFGE terminated her membership for nonpayment of dues for two years.

250.    Defendant AFGE,  through the actions of AFGE National President Everett Kelley and AFGE NST Eric Bunn, violated AFGE Local 3723's autonomy by refusing to admit Mr. Hudson as an AFGE Retired member in good standing retroactive to the April 2019 date that Local 1923 wrongfully terminated Mr. Hudson's membership for alleged nonpayment of dues and did so in violation of the AFGE National Constitution, AFGE Local 3723 Constitution, the AFGE NEC Dues Delinquency Policy,  the LMRDA, and the LMRA.

251.    Defendant AFGE is liable for the actions of its officials AFGE National President

Everett Kelley, former AFGE National President J. David Cox, and AFGE NST Eric Bunn,

under the doctrine of *respondeat superior* liability.

252.    Defendant AFGE violated the rights of Plaintiff, Local 3723,  Local 3723 members, and

District 12 to admit members of their choosing as guaranteed under the LMRDA, the LMRA, the

AFGE National Constitution, and the Local 3723 Constitution.

253.    Defendant AFGE's unlawful actions caused Plaintiff mental anguish and humiliation and

have had a chilling effect on the rights of Plaintiff and other Local 3723 members to exercise

their protected rights under the LMRDA, the LMRA, the AFGE National Constitution, the

AFGE Local 3723 Constitution, and the AFGE Dues Delinquency Policy.

254.    Thus, AFGE is liable for damages that Plaintiff has suffered as a result of its actions.


## COUNT 3

### AGAINST DEFENDANT AFGE  FOR VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE LMRA

255.    Plaintiff realleges and incorporates all prior paragraphs and paragraphs in the counts

below as though set forth fully herein.

256.    The AFGE National Constitution is a contract between AFGE and Local 3723 and

Plaintiff has standing to stand in the shoes of Local 3723 to sue for breach of that contract.

257.    The AFGE National Constitution and the Local 3723 Constitution set forth notice and

due process procedures that must be followed before AFGE may take adverse actions against

Plaintiff, who is a member in good standing.

258.    AFGE breached the terms of the AFGE National Constitution and the Local 3723

Constitution by failing to accept Plaintiff as a Retired member of Local 3723.

259.   The AFGE National Constitution is a contract between AFGE and Local 1923 and

Plaintiff has standing to stand in the shoes of Local 1923 to sue for breach of that contract.

260.   The AFGE National Constitution and the Local 1923 Constitution set forth notice and

due process procedures that must be followed before AFGE may take adverse actions against

Plaintiff, who is a member in good standing.

261.   AFGE breached the terms of the AFGE National Constitution and the Local 1923

Constitution by failing to accept Plaintiff as a Retired member of Local 1923.

262.    AFGE has denied Plaintiff the right to attend local meetings, vote, run for office, and

nominate officers.

263.   Presumably, AFGE will inform DOL that Plaintiff is not a member in good standing

because he did not pay his dues in April 2019 and is, therefore, ineligible to vote or run for office

in the upcoming June 2022 AFGE National Convention.

264.   The unlawful actions of AFGE have caused Plaintiff mental anguish and humiliation and

have had a chilling effect on the rights of Plaintiff and other Local 3723 and Local 1923

members to exercise their protected speech rights under the LMRDA.

265.    Thus, AFGE is liable for damages that Plaintiff has suffered as a result of its actions.

**COUNT 4**
**AGAINST DEFENDANT AFGE**
**DEFAMATION OF CHARACTER AND SLANDER**
**(D. C. COMMON LAW)**

266.   Plaintiff realleges and incorporates all prior paragraphs and paragraphs in the counts

below as though set forth fully herein.

267.   Under District of Columbia law, a plaintiff claiming defamation must show: "(1) that the

defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant

published the statement without privilege to a third party; (3) that the defendant's fault in

publishing the statement amounted to at least negligence; and (4) either that the statement was

actionable as a matter of law irrespective of special harm or that its publication caused the

plaintiff special harm." *Jankovic v. Int'l Crisis Group,* 494 F.3d 1080, 1088 (D.C. Cir. 2007)

<u>Hourani v.</u> <u>Mirtchev,</u> 943 F. Supp. 2d 159, 168 (D.D.C. 2013), <u>aff'd,</u> 796 F.3d 1 (D.C. Cir.

2015).   Plaintiff has made such a showing.

268.   Fully aware of the U.S. Department of Labor's findings reported to this Court that

Plaintiff timely and fully paid his AFGE dues for the period September 2018 through September

2019.

269.    Defendant AFGE wrongfully overruled Local 3723's autonomous vote to admit Plaintiff

as a Retired Member.

270.   AFGE falsely claimed that Plaintiff had not paid his annual $50 dues to Local 1923 for

the period September 2018 to September 2019.

271.   However, Plaintiff paid his dues to Local 3723 retroactive from April 2019 to August 22,

2022.

272.   For nearly three years, since April 2019, AFGE has circulated false statements to AFGE

members, including members of AFGE Local 3723 and Local 1923 that Plaintiff failed to pay his

AFGE membership dues and, for that reason, Plaintiff is no longer an AFGE member in good

standing.  As a result, AFGE has prohibited Plaintiff from attending all AFGE meetings,

including NEC meetings.  AFGE has prohibited Plaintiff from voting in AFGE elections.  AFGE

has prohibited Plaintiff from running for AFGE office.

273.   AFGE's treatment of Mr. Hudson is vastly different from its more favorable treatment of

Barbara Galle whom AFGE permitted to attend AFGE meetings, vote, run for elected AFGE

office and hold two elected AFGE offices despite the fact that she had not paid her AFGE dues for two years.

274.    AFGE defamed Mr. Hudson's reputation and character, humiliated him, significantly and adversely interfered with his ability to exercise his rights as an AFGE Retired member in good standing of AFGE Local 3723 and of AFGE Local 1923.

275.    AFGE violated Plaintiff's rights under the LMRDA and the LMRA as a Retired member in good standing to run for office in the August 2020 caucus and will likely prevent Plaintiff from running for office in the upcoming AFGE June 2022 national convention election.

276.    AFGE negligently made false, defamatory, libelous, and slanderous statements without privilege to third parties that Plaintiff did not pay his Local 1923 dues, is not a Retired member in good standing of Local 1923,  and may not attend meetings, vote, nominate himself for AFGE office, and enjoy all privileges accorded to other members of AFGE, including Barbara Galle.

277.    AFGE National maintains a list of AFGE Local 3723 members in good standing who are eligible to run in the upcoming AFGE national convention election in June 2022 that will not include the name of Mr. Hudson, even though AFGE National accepted Mr. Hudson's dues payment in cash to Local 3723,  accepted Plaintiff's dues payments to Local 1923 for the period September 2018 through September 2019, and despite that fact Mr. Hudson's dues are paid in full and current through August 2022.

278.    Defendant AFGE's false, defamatory, and slanderous statements that Mr. Hudson is not a member in good standing of AFGE, negligently circulated  to third parties -- including members of AFGE Local 3723, AFGE Local 1923, and other AFGE locals--defamed Plaintiff's reputation and character, significantly and adversely interfered with his status as an AFGE member in good

standing, humiliated Plaintiff, and may adversely impact his possible nomination for office in the upcoming June 2022 AFGE National Convention.

279.     AFGE National rejected the vote of Local 3723 members and falsely announced to Local 3723 members that Plaintiff is not a member in good standing of  AFGE National and AFGE Local 3723.

280.     Defendant AFGE  made these false statements and presumably will continue to make these false statements to DOL and to AFGE members as a basis for justifying Defendant AFGE's removal of  Mr. Hudson's name from its AFGE National database of members in good standing to prevent him from running in the upcoming June 2022 AFGE National election.

281.     By contrast, AFGE did not make such false, defamatory, and slanderous statements concerning Barbara Galle, who is Caucasian, after Ms. Galle failed to pay her AFGE dues for two years.

282.     The false, defamatory, and slanderous statements of Defendant AFGE, former AFGE National President J. David Cox, AFGE National President Everett Kelley, and NST Eric Bunn have caused and continue to cause Plaintiff significant harm that is actionable under D.C. Law.

283.     The racially discriminatory actions of Defendant AFGE, former AFGE National President J. David Cox, AFGE National President Everett Kelley, and NST Eric Bunn have caused and continue to cause Plaintiff mental anguish and humiliation.

284.      The unlawful actions of Defendant AFGE, former AFGE National President J. David Cox, AFGE National President Everett Kelley, and NST Eric Bunn have had a chilling effect on the rights of Plaintiff and other Local 3723 members to exercise their protected speech rights under the LMRDA.

285.    Defendant AFGE is liable for damages that Plaintiff has suffered as a result of AFGE's actions and the actions of AFGE officials.

## V.  PRAYER FOR RELIEF

WHEREFORE,  Plaintiff demands judgment against Defendant AFGE on all counts as discussed above, and requests that the Court issue an Order:

i.   Directing Defendant AFGE to immediately reinstate Plaintiff as an AFGE Retired Member in good standing of AFGE Local 3723;

ii.   Directing Defendant AFGE and its officials to rescind its determination and directive to AFGE Local 3723 that Plaintiff is not a Retired member in good standing;

iii.  Directing Defendant AFGE and its officials to remove all blocks on Mr. Hudson's membership status in the AFGE National "MYLOCAL" membership database and grant Mr. Hudson immediate access to the AFGE membership website;

iv.  Directing Defendant AFGE to allow Plaintiff to exercise his rights to be nominated, run for office, and campaign for AFGE National or local office and for a position as a delegate to the June AFGE 2022 National Convention and order AFGE to immediately give Mr. Hudson all campaign materials and access provided to other candidates;

v.   Enjoining Defendant AFGE from nominating officers and from holding the election of officers and delegates to the June AFGE 2022 National Convention, until such time as this Court issues a ruling on Plaintiff's accompanying motion for a temporary restraining order and motion for a preliminary injunction and memorandum in support thereof;

vi.  Declaring as null and void any election of delegates to the June 2022 AFGE National Convention held by Defendant AFGE after the filing of this complaint and accompanying motion for a temporary restraining order and motion for a preliminary injunction until such

time as Defendant AFGE permits Plaintiff to be nominated to run and campaign for the position of delegate and the national office of his choice during the June 2022 AFGE National Convention;

vii. Ordering Defendant AFGE, within 7 calendar days of the Court's Order, to send a letter informing all AFGE members, including  Local 3723 and Local 1923 members and all AFGE management and staff members that Plaintiff is a Retired Member in good standing of AFGE and a member in good standing of AFGE Local 3723 and that Mr. Hudson is eligible to be nominated for and run for office in the upcoming June 2022 AFGE election of national officers and in any other elections of his choosing.  The letter shall be addressed directly to all AFGE members' and staffs' individual  and AFGE email accounts on file with AFGE National, AFGE Local 3723, AFGE Local 1923 **and** shall be simultaneously mailed to all AFGE members by U. S. Postal Service first class mail to their home addresses contained in the AFGE National membership database as well as by posting the letter on the AFGE National website;   Within 7 calendar days of the Court's Order,  Defendant AFGE shall file a praecipe with this Court verifying that all letters and emails described in this section and all postings on the AFGE National website have been sent.

viii.    Directing AFGE to reimburse Eugene Hudson, Jr. for his pain, suffering and humiliation at being ousted from AFGE Retired membership in the amount of not less than $150,000 for each occurrence thereof;

ix. Directing AFGE to pay punitive damages to Eugene Hudson, Jr. to discourage AFGE from engaging in such egregious conduct toward its members in the future; in the amount of not less than $500,000.

x.  Directing  AFGE to reimburse Eugene Hudson, Jr.'s attorneys' fees and costs associated with the filing of this complaint, motion for a temporary restraining order, motion for a preliminary injunction, and memorandum in support thereof;

xi.  Awarding other damages and relief as this Court finds just and equitable.

## VI.  JURY TRIAL

Plaintiff requests a jury trial.

Respectfully submitted,

/s/_____
Marlene (Kemi) Morten,
Counsel for Plaintiff
D. C. Bar 272575
3825 South Capitol Street, S. W. Washington, D. C. 20032
202-379-4806/202-492-5963


Date:  February 3, 2022