UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EUGENE HUDSON, JR.,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN FEDERATION OF<br>GOVERNMENT EMPLOYEES,<br><br>Defendant. | Civil Action No. 22-289 (JEB) |

MEMORANDUM OPINION

In the latest skirmish between Plaintiff Eugene Hudson, Jr. and Defendant American Federation of Government Employees, Hudson seeks reinstatement as a member of AFGE such that he can continue his quest to be elected President of the Union. He has thus brought this suit alleging that AFGE's refusal to reinstate him constitutes race discrimination and a violation of various federal labor statutes. In now moving for Court intervention to allow his candidacy at the forthcoming June convention, Hudson contends that he has satisfied the preliminary-injunction factors. Believing that he has not demonstrated a likelihood of success on the merits, the Court holds otherwise.

**I.    Background**

Chronicling the full history of this labor dispute would require the powers of a Thucydides. Lacking such abilities and wishing to spare the reader, the Court offers only a *precis* of the action. The genesis of the earliest suit Hudson brought was his ouster as National Secretary Treasurer of AFGE and his inability to run for President in 2016. See, e.g., Hudson v. American Federation of Gov't Employees, 318 F. Supp. 3d 7 (D.D.C. 2018) (Hudson I).

1

Another suit focused on the Union's prior removal of certain of his duties as NST. See, e.g., Hudson v. American Federation of Gov't Employees, No. 17-2094, 2021 WL 5083436 (D.D.C. Nov. 2, 2021) (Hudson II). A third challenged his being purged from the membership rolls. See, e.g., Hudson v. American Federation of Gov't Employees, No. 19-2738, 2020 WL 3035039 (June 5, 2020), aff'd, 2021 WL 4811388 (D.C. Cir. Oct. 12, 2021) (Hudson III).

This time around, in a Complaint that is rather digressive and difficult to follow at points, Hudson alleges that "AFGE violated [his] rights . . . by refusing to accept Local 3723's retroactive reinstatement of [his] AFGE membership." ECF No. 1 (Compl.), ¶ 216. Apparently, after Local 1923, his original local, determined that Plaintiff had lost his retired-member status for failure to pay dues, a separate local, Local 3723, "attempted to correct the unfair termination of Mr. Hudson's membership by retroactively admitting [him] as an AFGE Local 3723 Retired member in good standing," which effort AFGE subsequently stymied. Id., ¶¶ 246–47.

Plaintiff alleges that this refusal to permit reinstatement, which prevents him from running for office at the upcoming June convention, was racially motivated. Id., ¶ 221. Hudson, who is Black, cites AFGE's permitting a White member, Barbara Galle, to run for and hold two AFGE offices despite not having paid dues. Id., ¶ 222. Unlike Hudson, Galle was allegedly reinstated retroactively, the same treatment Plaintiff asserts is being denied him. Id., ¶ 227.

In addition to bringing his race-discrimination claim (Count I), Hudson alleges that AFGE violated his rights under the Labor Management Reporting and Disclosure Act (LMRDA) (Count II) and the Labor Management Relations Act (LMRA) (Counts II and III). The alleged labor-law violations also stem from AFGE's adoption of "Local 1923 President Autrey's April 2019 decision to irrevocably sever Mr. Hudson's AFGE membership for nonpayment of dues even though Defendant AFGE was fully aware [of a Department of Labor determination] that

2

[he] had fully paid his dues to Local 1923." Id., ¶ 245.  This, Hudson contends, contravened both statutes, in part through its violation of the AFGE National Constitution and the Local 3723 Constitution.  Id., ¶¶ 252, 256.  Last, he appends a defamation claim under D.C. common law (Count IV) for AFGE's publishing the statement that he had not paid his dues.  Id., ¶ 270.

On March 3, 2022, Hudson moved for a Temporary Restraining Order, which this Court denied after a hearing on March 8.  See Minute Order of March 8, 2022.  Given the organizational oddities in his initial brief, see ECF No. 14-2 (TRO/PI Motion) (15-page "Statement of Facts" located at pages 29–43 of brief following legal argument), the Court suggested that Plaintiff would be better served by filing an Amended Motion for Preliminary Injunction, which he did on March 23.  See ECF No. 18 (Am. Mem.).  He now "asks the Court to order AFGE to immediately reinstate him as a Retired AFGE member in good standing so that Plaintiff may announce his candidacy and run for office during the June 2022 AFGE National Convention."  Id. at 24.  AFGE opposes such relief.

**II.      Legal Standard**

"A preliminary injunction is an extraordinary remedy never awarded as of right."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  Sherley v. Sebelius, 644 F.3d 388, 392 (D.C. Cir. 2011) (alterations in original) (quoting Winter, 555 U.S. at 20).  "The moving party bears the burden of persuasion and must demonstrate, 'by a clear showing,' that the requested relief is warranted."  Hospitality Staffing Solutions, LLC v. Reyes, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (quoting Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290,

297 (D.C. Cir. 2006)).

Historically, these factors have "been evaluated on a 'sliding scale.'" Davis v. Pension Ben. Guar. Corp., 571 F.3d 1288, 1291 (D.C. Cir. 2009) (quoting Davenport v. Int'l Bhd. of Teamsters, 166 F.3d 356, 361 (D.C. Cir. 1999)). In other words, if the movant makes an "unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." Id. at 1291–92. This Circuit has hinted, though not held, that Winter — which overturned the Ninth Circuit's "possibility of irreparable harm" standard — establishes that "likelihood of irreparable harm" and "likelihood of success" are "'independent, free-standing requirement[s].'" Sherley, 644 F.3d at 392–93 (quoting Davis, 571 F.3d at 1296 (Kavanaugh, J., concurring)); see League of Women Voters v. Newby, 838 F.3d 1, 7 (D.C. Cir. 2016) (declining to address whether "sliding scale" approach is valid after Winter). At any rate, our Circuit has held that a failure to demonstrate a likelihood of success on the merits alone is sufficient to defeat a preliminary-injunction motion. See Ark. Dairy Co-op Ass'n, Inc. v. U.S. Dep't of Agric., 573 F.3d 815, 832 (D.C. Cir. 2009).

**III.  Analysis**

In seeking injunctive relief, Hudson contends that he has satisfied all four of the Winter factors. See Am. Mem. at 39–41. AFGE's Opposition focuses on the first — likelihood of success — contending both that preemption robs the Court of jurisdiction and that he cannot succeed on any of his counts. See ECF No. 19 (Def. PI Opp.) at 3–17. The Court concurs that it need not venture beyond the initial injunction prong.

As AFGE notes in its Opposition, the structure of Hudson's Amended Memorandum is rather perplexing. After a "Statement of Facts" spanning 24 pages (and including some legal argument), Plaintiff spends his next 14 pages explaining why the Court has jurisdiction over his

4

claims. See Am. Mem. at 1–24 & 25–38. Perhaps constrained by page limits, he then devotes precisely one full page to arguing why he is likely to succeed on the merits. Id. at 39. The cursory arguments therein are not enough to carry the significant burden an injunction movant bears.

To be more specific, Hudson's abbreviated argument focuses almost entirely on his discrimination claim, maintaining that he "is likely to succeed on the merits of his claim that AFGE discriminated against him on the basis of race as compared with AFGE's more favorable treatment of Barbara Galle, a Caucasian American AFGE member." Id. This is because Defendant "retroactively reinstat[ed] her AFGE membership after Ms. Galle was two years late in paying her AFGE dues," but did not do the same for Hudson. Id. He argues that this treatment violates "Article III, Section 1(a) of the AFGE Constitution, the LMRA, the LMRDA, and the federal and District of Columbia civil right statutes." Id.

The problems with Plaintiff's position are manifold. First, we are never told even what sections of the LMRDA or LMRA are violated by AFGE's purported actions. To succeed on such claims certainly requires more. Second, while the cited section of the AFGE Constitution does indeed prohibit race discrimination in membership eligibility, Hudson does not explain through what statutory vehicle such claim could be enforced. Third, to the extent that this is a straight civil-rights claim — e.g., under Title VII or the D.C. Human Rights Act — the facts alleged are too thin. In other words, all we know is that Galle is White and that she was retroactively reinstated, while he is Black and was not. There is no evidence that these results was in fact based on race, as opposed to myriad other possible reasons. See 42 U.S.C. § 2000e-2(a) (Title VII provision explaining that it is an "unlawful employment practice" to "discriminate against any individual . . . because of such individual's race") (emphasis added). That she is

5

White and he is Black, standing alone, does not suffice.  This is particularly so at the preliminary-injunction stage, where the Court is not required to accept Plaintiff's allegations as true.

While Hudson contends in his Reply that he has evidence that race discrimination was the basis for the disparate treatment of himself and Galle, see ECF No. 22 (Reply) at 5–6, 16–17, that is plainly an overstatement.  First, he never cites any record evidence in his one-page argument on likelihood of success.  See Am. Mem. at 39.  Second, the operative pleading is his Amended Memorandum, which has different exhibits from his original Motion.  Compare Am. Mem. & Exhibits with ECF No. 14 (TRO/PI Motion & Exhibits).  Indeed, Hudson's own declaration appears only in the original, meaning that he cannot rely on it here.  See ECF No. 14-10 (Declaration of Eugene Hudson, Jr.).  The Court, instead, can consider only the Amended Memorandum and has no basis to return to prior superseded pleadings to glean evidence.  The declarations attached to that pleading say nothing about race discrimination; rather, they talk only about how Hudson was not reinstated as a member while Galle was.  See Am. Mem., Exhs. 8 (Declaration of John Morris), 9 (Declaration of Stephen Willertz), 13 (Declaration of Barbara Galle).  Hudson thus has not offered record proof of discriminatory treatment.  Last, he is incorrect to maintain that AFGE has supplied no non-discriminatory basis to distinguish his situation from Galle's.  Defendant actually mentions several grounds in its Opposition, which are derived from Hudson's own Motion.  See ECF No. 19 (Def. Opp.) at 13.  In sum, Plaintiff has not established that he would likely prevail here.

Even if Hudson had sufficiently established the bases of his claims here, he might well still be out of luck for the preemption reasons AFGE invokes.  In a previous case, this Court dealt with essentially the same issue Hudson raises here — *viz.*, a complaint about his

membership status. More specifically, his gripe there was that the President of Local 1923 had rescinded his membership for failure to pay dues; when he appealed to AFGE, he was told that such an issue was outside of the national Union's purview. Just as here, that decision deprived him of the right to vote in Local elections, nominate candidates, and run and serve; indeed, he was not even permitted entry into general membership meetings. Hudson III, 2020 WL 3035039, at *2. AFGE there moved to dismiss on a number of grounds, including preemption by the Civil Service Reform Act. Id. at *5.

> As the Court explained:
>
>> The CSRA, which "establishes a comprehensive scheme to deal with labor relations" for the federal government, expressly addresses membership in a federal-sector union. AFGE v. U.S. Sec'y of Air Force, 716 F.3d 633, 636 (D.C. Cir. 2013) (quoting Dep't of Def. v. FLRA, 685 F.2d 641, 644 (D.C. Cir. 1982)). The Act applies to Hudson, a retired federal employee, who disputes his membership in Local 1923 — a labor organization of government employees covered under the Act. . . .
>>
>> Given this comprehensive scheme, it is plain that Congress intended that individuals bringing membership and election claims of the type governed by the CSRA must seek redress through its administrative pathway, not through the district court. As the Supreme Court has made clear, "[E]xtra statutory review is not available to those employees to whom the CSRA grants administrative and judicial review." Elgin v. U.S. Dep't of Treasury, 567 U.S. 1, 11 (2012). To borrow from the D.C. Circuit, Hudson "'may not circumvent that structure' by seeking judicial review outside the CSRA's procedures." AFGE, 716 F.3d at 636 (quoting Steadman v. Governor, U.S. Soldiers' & Airmen's Home, 918 F.2d 963, 967 (D.C. Cir. 1990)).

Id. at *5, *6. This preemption applied to both Hudson's LMRDA and race-discrimination claims as they related to membership. Id. at *6, *7 ("Plaintiff cannot escape the CSRA's reach by dressing up his membership claim with a different label — i.e., Title VII and Section 1981.") (citations omitted).

Attempting to circumvent this prior ruling, Plaintiff offers several arguments. He first cites to this Court's decision in another labor case, Murray v. Amalgamated Transit Union, 220 F. Supp. 3d 72 (D.D.C. 2016), where the Court did address the merits of the plaintiffs' membership claims under the LMRDA. The problem for Hudson is that Murray did not mention CSRA preemption because the union defendant there never raised the issue, perhaps because the plaintiffs there were not federal employees.

Plaintiff similarly contends that the Court's preemption ruling is inconsistent with its earlier holding in a previous case Hudson filed, Hudson I, 318 F. Supp. 3d 7 (D.D.C. 2018). That litigation concerned not membership, however, but Plaintiff's ouster as NST for campaign violations in his prior efforts to seek the Union presidency. Id. at *10. There, too, the Court never considered the CSRA preemption question, which AFGE had not mentioned. Once again, that is likely because the issue there had nothing to do with membership.

He last maintains that the prior Hudson preemption decision should not bind the Court because Hudson is "not a 'retiree of the federal government.' He is a private sector retiree. Private sector employees' claims against their mixed labor organizations fall outside the jurisdictional ambit of the CSRA and squarely within the jurisdiction of the federal courts." Am. Mem. at 36. As AFGE notes, this may not be an appropriate characterization of his status. His private-sector job was as an officer of AFGE, and he was a member of that Union — and thus eligible to be an officer — only because he was a former federal employee. See Def. Opp. at 5–6. As Plaintiff himself acknowledges, he "worked for the U.S. Social Security Administration for 13 years from 1976 to 1989" before being hired as a national representative of the Union. See Am. Mem. at 2. This Court, moreover, previously found that CSRA preemption was proper in regard to former federal employees. Hudson III, 2020 WL 3035039, at *6.

As a result, despite Plaintiff's lengthy arguments to the contrary, the Court is unsure that there is a basis to distinguish its prior holding regarding CSRA preemption; even had Hudson sufficiently established a cause of action, it would thus likely be preempted.

## IV.  Conclusion

For the foregoing reasons, the Court will deny Plaintiff's Motion for Preliminary Injunction.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: April 20, 2022