**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **EUGENE HUDSON, JR.,** | |
| **Plaintiff,** | |
| v. | **Civil Action No. 22-289 (JEB)** |
| **AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES,** | |
| **Defendant.** | |

<u>**MEMORANDUM OPINION**</u>

Perhaps taking The Terminator's famous vow as his personal mantra, Plaintiff Eugene Hudson, Jr. is back once more — this time in yet another suit against his former employer and national union, the American Federation of Government Employees.  In a prior action, he accused AFGE and its leadership of violating a series of federal and state laws when they refused to recognize him as a member in good standing in relation to a dues dispute.  This Court dismissed the case, holding that the Civil Service Reform Act preempted its jurisdiction, and the Court of Appeals affirmed.  Hudson has since received help from AFGE Local 3723, which voted to retroactively admit him as a member of its Local — thus ostensibly permitting him to run again for national office — but AFGE still refuses to recognize his membership in the union. That decision precipitated this suit, which once again asserts that AFGE's position violates, *inter alia*, various federal labor laws.  AFGE now moves to dismiss.  Finding that Hudson is precluded from reopening the issue of this Court's jurisdiction to consider almost all of the claims, the Court will grant the Motion in large part but not entirely.

I.      **Background**

   A.  Factual Background

A string of Opinions from this Court that would fill a substantial volume of the Federal Reporter memorializes the various disputes between Hudson and AFGE.  See, e.g., Hudson v. AFGE, No. 22-289, 2022 WL 1165912 (D.D.C. Apr. 20, 2022) (Hudson PI); Hudson v. AFGE, No. 17-2094, 2021 WL 5083436 (D.D.C. Nov. 2, 2021); Hudson v. AFGE, No. 19-2738, 2020 WL 3035039 (D.D.C. June 5, 2020) (Hudson Membership); Hudson v. AFGE, No. 17-2094, 2020 WL 1275685 (D.D.C. Mar. 17, 2020); Hudson v. AFGE, 318 F. Supp. 3d 7 (D.D.C. 2018). Rather than re-chronicling the details of this saga, the Court will lay out only the facts most relevant to this action, with a focus on factual developments that have occurred since this Court addressed Hudson's membership-related claims in Case No. 19-2738, Hudson Membership.  As is required at this stage, the Court will draw the facts from the Complaint and from past related decisions referenced therein.  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).

Hudson has been an AFGE member for over four decades.  See ECF No. 1 (Compl.), ¶¶ 6–7.  When he joined the union, he was a federal-government employee at the Social Security Administration, but he resigned from that position in 1989.  Id., ¶¶ 7, 51.  Because he continued to pay annual dues to AFGE Local 2452 (based in Los Angeles, id., ¶ 6), however, he was able to remain an AFGE member pursuant to section 1(c) of the AFGE Constitution.  Id., ¶¶ 56–57; id., ¶ 50 (noting Section 1(c) permits former federal employees who continue to pay AFGE dues after separation to retain membership).  Since leaving federal employment, Hudson has held various positions in AFGE.  Most recently, he served multiple terms as National Secretary-Treasurer and was the first Black person elected to that position.  Id., ¶¶ 1–2.  He was ousted in

2017 in relation to his campaign for President, a controversy that is the subject of Case No. 17-1867, which is still ongoing.

Hudson's membership woes began with a cross-country move.  Plaintiff had spent most of his tenure as an AFGE member in California, but at some point in 2018, he decided to leave the West Coast for Maryland in order to run for a position in Baltimore-based Local 1923. Hudson Membership, 2020 WL 3035039, at *1.  He accordingly transferred his AFGE membership from the L.A.-based Local 2452 to Local 1923.  See Compl., ¶ 88.  Hudson then sent his new Local $50, assuming that this would cover his dues for the period from September 2018 to September 2019.  Id., ¶ 89.

Apparently not.  Without acknowledging Hudson's $50 check, in January 2019 and then again in March, Anita Autrey (the president of Local 1923) sent Plaintiff and other AFGE members a letter informing them that they would have to pay their 2019 annual dues of $50 by April 15, 2019, to maintain their membership in Local 1923.  Id., ¶ 92.  Hudson alleges that he never received those letters.  Id., ¶ 93.  When he eventually attempted to pay his dues on April 23, 2019, he was told that it was too late; his membership had terminated on the fifteenth, and his relationship with Local 1923 had been "irretrievably severed."  Id., ¶¶ 94, 97.  Hudson's subsequent attempts to pay his dues were rebuffed.  Id., ¶¶ 98–101.

Plaintiff, for his part, insists that any requisite dues were paid in September 2018, and that he is therefore being unlawfully deprived of the benefits of membership.  He emphasizes that as part of an investigation related to a separate action involving the same parties, the Department of Labor corroborated his assertion that he properly paid his dues for the year-long period between September 2018 and 2019.  Id., ¶ 110.  In June 2019, determined to have his membership recognized — in part because he wished to declare his candidacy in upcoming

3

union elections — Hudson internally appealed Autrey's decision to "sever" his membership.  Id., ¶ 105.  AFGE National promptly denied that appeal.  Id., ¶ 106.  Given the amount of time and money AFGE has spent fighting this $50 issue, one wonders if discretion might have been the better part of valor here, yet it is not for the Court to reason why.

Having attained no relief from his Local or from AFGE National, Hudson eventually sought help from Local 3723, a California-based Local.  Although Plaintiff's prior relationship with that Local is not clear from the Complaint, he alleges that on August 22, 2020, its members voted to admit him as an AFGE Retired Member in good standing with no break in membership and with all attendant rights and privileges, retroactive to April 2019 (the date Autrey severed his Local 1923 membership).  Id., ¶ 163.  Presumably seeking the parent union's recognition of that retroactive admission, the President of Local 3723 emailed George McCubbin, the National Vice President of District 12 (which covers AFGE Locals in California, among other states, see AFGE Districts, afge.org/districts), informing him of the vote.  Id., ¶ 164.  McCubbin ignored the email and apparently took no other action with respect to Hudson's membership.  Id., ¶ 167.

In September 2020, Hudson was dealt another blow.  At some point early that year, he had tried to run for AFGE office but was informed in March that he was ineligible.  Id., ¶ 168.  He appealed that decision to National Secretary-Treasurer Eric Bunn on September 8.  Id.  Ten days later, Bunn affirmed the March decision.  As part of that affirmance, he reiterated that Hudson was ineligible for office because he was no longer a Local 1923 member, and he added that Local 3723's vote to admit Hudson was inconsequential because the AFGE Constitution makes no allowance for retroactive membership.  Id., ¶¶ 121, 198.

As far as Plaintiff is directly concerned, those events form the timeline relevant to the questions now before this Court.  Yet, given that he is asserting that race discrimination

motivated some of these decisions, he introduces a new character: Barbara Galle, a "similarly situated Caucasian American AFGE member of Local 3669," whom he alleges was treated differently under similar circumstances.  Id., ¶ 125.  The Court will briefly recount her story as relevant here.

In June 2019, Kanisha Cunningham, an AFGE staff member, noticed that Galle, then-president of Local 3669, was late in paying her AFGE dues.  Id., ¶¶ 128–29.  Cunningham accordingly "inactivated" Galle from her officer position and as an AFGE member, and so informed regional NVP Gregg James.  Id., ¶ 130.  James responded that Galle's membership should not have been inactivated.  Id., ¶ 135.  Cunningham thus "activate[d] Ms. Galle back into her position" and kept her on the AFGE member database.  Id., ¶¶ 137, 139.  Galle has since been permitted to run for various AFGE positions.  Id., ¶¶ 141, 143–44.  Notably, by the time she ran for and was elected to those positions, she had not paid her dues for nearly two years.  Id., ¶ 147.

It was not until the fall of 2021 that Galle was made to settle her debts.  Id., ¶ 186.  Hudson points out, however, that at no point in the dues-paying process did Galle have her membership threatened, id. ¶ 175, and at no point did she face obstacles in her effort to pay those late dues.  Id., ¶ 186.  Instead, she was able to pay retroactively.  Id.

B.  Procedural History

If the facts at the center of this dispute appear familiar to a reader who has followed this long-running battle, it's because they are.  In September 2019, after most of the aforementioned events had occurred (but before the Local 3723 vote, which took place in August 2020), Hudson took his membership dispute to court — this Court, to be precise.  Id., ¶ 108.  He sued AFGE, Local 1923, Autrey, and the Department of Labor, "accus[ing] [them] of violating a number of

federal statutes and the common law." Hudson Membership, 2020 WL 3035039, at *1.  His

complaint contained "myriad intertwined claims within different counts," id. at *4, which this

Court distilled into five types of claims: (1) claims that the denial of Hudson's membership

rights, including the right to vote and participate in elections, violated his rights under the Labor

Management Reporting and Disclosure Act (LMRDA), id.; (2) claims alleging breach of contract

and breach of the covenant of good faith and fair dealing based on Defendants' revocation of his

membership without proper notice, id. at *7; (3) claims that Defendants discriminated against

Hudson based on his race in violation of Title VII and section 1981 when they rescinded his

membership and refused to reinstate it, id.; (4) defamation claims based on various statements

from Defendants that Hudson was not an AFGE member in good standing, id. at 8; and (5)

claims that Defendants violated his rights under the Labor Management Relations Act (LMRA)

in the process of rescinding his membership.  Id. at *9.

This Court ultimately granted Defendants' motion to dismiss all of Plaintiff's causes of

action.  Id. at *1.  It found that each category of claims was preempted by the Civil Service

Reform Act (CSRA), which "'establishes a comprehensive scheme to deal with labor relations'

for the federal government, [and which] expressly addresses membership in a federal-sector

union." Id. at *5 (quoting AFGE v. U.S. Sec'y of Air Force, 716 F.3d 633, 636 (D.C. Cir.

2013)); id. at *6 ("His [LMRDA] claims are therefore preempted."); id. at *7 ("[T]hese

[contract-related] counts . . . are also preempted by the CSRA."); id. ("Plaintiff cannot escape the

CSRA's reach by dressing up his membership claim with a different label — i.e., Title VII and

Section 1981."); id. *8 ("[Defendants] maintain that Plaintiff's defamation count is preempted by

the CSRA.  The Court agrees.") (citation omitted); id. at *10 ("The CSRA once again preempts

these [LMRA] claims against . . . AFGE.").

Hudson appealed.  The D.C. Circuit affirmed.  Hudson v. AFGE, No. 20-5181, 2021 WL 4811388, at *1 (D.C. Cir. Oct. 12, 2021) (Hudson Membership Appeal).  The panel noted that this Court had "dismissed the case for lack of jurisdiction, holding that the [CSRA] . . . precluded all of Hudson's claims."  Id.  While "Hudson argued before the district court that the [CSRA] did not apply to him because he was a retired federal employee," the panel explained, he abandoned that argument on appeal in favor of an "entirely new argument as to why the [CSRA] does not apply to him" — that he is "not a retired federal employee" but "a retired private sector employee."  Id.  Because his "entire appeal" rested on a new argument that was forfeited, the court affirmed.  Id. at *2.

Undeterred, and apparently invigorated by the Local 3723 vote (which took place after this Court's decision in Hudson Membership), Plaintiff filed the current suit soon after his loss at the Circuit.  Unlike in Hudson Membership, he names AFGE as the sole defendant in this case; the Complaint otherwise is strikingly familiar.  The facts from Hudson Membership make a reappearance, albeit supplemented by some more recent developments.  That's not all, though.  Hudson's causes of action in the instant case also substantially overlap with those from the earlier suit, both in form and substance.  The Complaint, unfortunately, is no model of clarity, but it contains four counts that appear to allege a series of violations of the LMRDA, LMRA, federal and state laws prohibiting racial discrimination, and D.C. defamation and contract law — just like the Complaint in Hudson Membership.  Compare Compl., ¶¶ 217–85, with Hudson Membership, No. 19-2738, ECF No. 15 (Hudson Mem. Compl.), ¶¶ 136–203.  Each count ultimately takes issue with AFGE's refusal to recognize his membership in the union.

In March 2022, anticipating the then-impending June election of AFGE national officers, Hudson filed a Motion for a Temporary Restraining Order and for a Preliminary Injunction in

this case.  See ECF No. 14 (PI Motion).  He asked the Court to "retroactively reinstate [his] status as a Retired Member of AFGE with full rights to vote, run for, and hold elected union office."  Id. at 1.  This Court denied the Motion for a Temporary Restraining Order on March 8, 2022, after a hearing, see Minute Order of Mar. 8, 2022, and denied the Motion for a Preliminary Injunction on April 20.  Hudson PI, 2022 WL 1165912, at *1.  In denying the latter motion, this Court noted that it was "unsure that there [was] a basis to distinguish its prior holding [in Hudson Membership] regarding CSRA preemption."  Id. at *5.

AFGE then filed a Motion to Dismiss, see ECF No. 40 (MTD), which is now ripe.

## II.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief may be granted.  In evaluating such a motion to dismiss, courts must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  Sparrow, 216 F.3d at 1113 (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570) — that is, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  A court need not accept as true, then, "a legal conclusion couched as a factual allegation," Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)), nor "inferences . . . unsupported by the facts set out in the complaint."  Id. (quoting Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

And it may consider not only "the facts alleged in the complaint," but also "any documents either attached to or incorporated in the complaint[,] and matters of which [courts] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

## III.   Analysis

Much of the ground Hudson asks the Court to cover in this action was well plowed in Hudson Membership.   As he did there, Plaintiff takes umbrage at the denial of his membership in an AFGE Local after his alleged failure to pay dues, and he objects to AFGE National's refusal to reinstate him.   Hudson Membership, 2020 WL 3035039, at *3; Compl., ¶¶ 229, 250.   Once again, he believes Local 1923 and AFGE treated him unfairly by denying him the right to vote and run for office.   See Hudson Mem. Compl., ¶¶ 142, 148, 199; Compl., ¶¶ 221, 228, 244–45. And he again asks AFGE to "rescind its determination and directive" to a Local that he is not a member in good standing.   See Hudson Mem. Compl. at 49; Compl. at 43.

But Hudson is not the only party causing this Court to experience some *déjà vu*.   AFGE raises as its primary objection the same jurisdictional concern it invoked in Hudson Membership: it contends that Plaintiff's claims are preempted by the CSRA because Congress intended the Act to provide the exclusive means for a former federal employee to raise grievances concerning his membership in a covered union like AFGE.   See MTD at 5–10.   Recognizing that we have been here before, however, AFGE urges the Court not to revisit the merits of the preemption issue. Instead, it maintains that issue preclusion bars the relitigation of a jurisdictional issue that was previously decided.   Id. at 3–5.

This Opinion will thus begin with that threshold question of preclusion.   And for most claims, it will end there.   This is because the Court agrees with AFGE that it has already decided

the precise issue of its jurisdiction to consider many of the claims Hudson brings in this action. The Opinion will then address the sole count that remains — the one he brings on behalf of Local 3723.

A.  Preclusion

This section separately examines whether issue preclusion applies and the validity of Hudson's objections to preclusion here.

    1.  *Applicability of Doctrine*

The doctrine of issue preclusion instructs that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980).  The benefits of the doctrine have been repeatedly reaffirmed: it "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and . . . encourage[s] reliance on adjudication." Id. at 95.  The doctrine has therefore been extended to jurisdictional issues.  "A dismissal for lack of jurisdiction . . . 'preclude[s] relitigation of the precise issue of jurisdiction that led to the initial dismissal.'" Jackson v. Off. of the Mayor of D.C., 911 F.3d 1167, 1171 (D.C. Cir. 2018) (quoting GAF Corp. v. United States, 818 F.2d 901, 912 (D.C. Cir. 1987)).

An earlier holding has preclusive effect under three conditions: "First, the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case.  Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case.  Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination." Hall

v. Clinton, 285 F.3d 74, 80 (D.C. Cir. 2002) (quoting Yamaha Corp. of Am. v. United States, 961

F.2d 245, 254 (D.C. Cir. 1992)) (alterations omitted).  All three requirements are satisfied here.

To begin, the primary jurisdictional issue now being raised is the same one that the

parties "contested" and "submitted for . . . determination" in Hudson Membership.  More

specifically, that question here is whether Hudson's challenges to AFGE's repeated "refus[al] to

admit [him] as a member in good standing," Compl., ¶ 229, and to AFGE's related decision to

bar Hudson from election-related processes, id., ¶ 262, are preempted by the CSRA.  In other

words, does the CSRA provide the exclusive means of redress for Plaintiff's grievances related to

his exclusion from membership in an AFGE Local?  See Hall, 285 F.3d at 81 (defining precluded

issue in CSRA preemption case as "whether the CSRA constituted the sole remedy for

[defendant's] conduct") (citations and internal quotations omitted).

And this was the exact question in Hudson Membership.  The overlap appears clearly in

both components of the jurisdictional issue.  First, in Hudson Membership, as here, Hudson's

Complaint contained a laundry list of challenges that boiled down to the same fundamental

grievance — namely, he believed that the revocation of his membership in an AFGE Local and

his consequent ineligibility to run for office or participate in elections violated his rights under

various laws.  Hudson Membership, 2020 WL 3035039, at *4.  For example, in both suits,

Hudson: alleged that termination of his membership violated the LMRDA, AFGE's Constitution,

and Local 1923's Constitution, compare, e.g., Compl., ¶ 244, with Hudson Mem. Compl., ¶ 148;

alleged, with minimal explanation, that AFGE breached its duty of fair dealing and its contract

with Plaintiff "under D.C. common law," compare Compl., ¶ 230, with Hudson Mem. Compl.,

¶ 140; alleged, using the same language in both Complaints, that AFGE "defamed [his]

reputation and character" by stating that Hudson did not pay his Local 1923 dues, compare

Compl., ¶¶ 274–76, with Hudson Mem. Compl., ¶¶ 167–68; and alleged that AFGE's refusal to include Hudson as member was a "racially discriminatory decision" because "Caucasian" members were not treated in same way.  Compare Compl., ¶¶ 221–22, 229, with Hudson Mem. Compl., ¶¶ 199, 201.

Second, in Hudson Membership, as here, Defendants (including AFGE) submitted that the CSRA provides the exclusive procedural avenue for raising grievances stemming from Hudson's membership in an AFGE Local.  Hudson Membership, ECF No. 52-1 (Hudson Mem. MTD) at 1–2 ("[The CSRA] . . . preempts this Court or any trial court over matters falling within its scope.  Membership in a federal section union . . . is governed by the [CSRA].").  That, moreover, was the contested issue.  Id., ECF No. 66 (Hudson Mem. Opp. to MTD) at 7 ("Defendants' assertion that plaintiff's claims are subject to the exclusive remedies of the [CSRA] and therefore not properly presented in this court are incorrect.").  The sameness-of-issue requirement is thus satisfied.

To be sure, Hudson's current suit is distinct from Hudson Membership in that he now disputes AFGE's refusal to recognize his membership in Local 3723, not just Local 1923.  But that is a distinction without a difference for purposes of defining the jurisdictional issue.  "Issues may be deemed identical even though their factual contexts and underlying claims differ." Stanton v. D.C. Ct. of Appeals, 127 F.3d 72, 77 (D.C. Cir. 1997).  That is the case here: Hudson now objects to AFGE's refusal to recognize his membership in one of its Locals, just as he did in Hudson Membership.  No part of Hudson Membership's preemption analysis, furthermore, turned on which AFGE Local Hudson sought to join.  The relevant question was whether the category of grievances he sought to raise was preempted, and the relevant fact was that the organization Hudson sought to join was covered by the CSRA.  See, e.g., Hudson Membership,

2020 WL 3035039, at *5 ("The Act applies to Hudson[,] . . . who disputes his membership in . . .
a labor organization of government employees covered under the Act.").  In any event, Plaintiff
does not press this argument in his Opposition, nor does he assert that changing the Local he
seeks to join would affect the jurisdictional deficiency identified in <u>Hudson Membership</u>.

 The second requirement for preclusion is also fulfilled because this Court actually and
necessarily determined the jurisdictional issue in <u>Hudson Membership</u>.  The Court there
examined the CSRA's extensive list of prohibitions on "unfair labor practices" and found that,
contrary to Plaintiff's contention, the Act regulates the type of membership-related misconduct
that Hudson alleged.  <u>See</u> 2020 WL 3035039, at *5.  For example, § 7116(c) prohibits denial of
"union membership to any employee [a labor organization] represents."  <u>Id.</u> (citing 5 U.S.C.
§ 7116(c)).  Section 7120 governs "election-related grievances."  <u>Id.</u> (citing 5 U.S.C. § 7120(a)).
And the CSRA generally prohibits labor organizations from discriminating against employees.
<u>Id.</u> at *7 (citing 5 U.S.C. §§ 7114(a)(1), 7116(b)).  The Court concluded that given the CSRA's
"comprehensive scheme," Congress plainly intended that individuals like Hudson who are
"bringing membership and election claims of the type governed by the CSRA . . . seek redress
through its administrative pathway, not through the district court."  <u>Id.</u> at *6.

 This Court also found that Hudson's use of different statutory or legal vehicles did not
affect that conclusion with respect to any of the sundry causes of action in his Complaint.  Each
claim objected to the same fundamental conduct — AFGE's refusal to recognize Hudson's
membership — and so presented "precisely the kind of grievance that is covered by the CSRA."
<u>Id.</u> at *7; <u>see, e.g.</u>, <u>id.</u> at *6 ("It makes little difference . . . that he frames his claims as violations
of the LMRDA."); <u>id.</u> at *7 ("Plaintiff cannot escape the CSRA's reach by dressing up his
membership claim with a different label — <i>i.e.</i>, Title VII and Section 1981.").  On that basis, this

Court granted Defendants' Motion to Dismiss.  Id. at *10; see also Hudson Membership Appeal, 2021 WL 4811388, at *1 ("The district court dismissed the case for lack of jurisdiction, holding that the Civil Service Reform Act, which created an elaborate administrative framework to manage public-sector union disputes, precluded all of Hudson's claims.").  The preemption issue was necessary to that judgment because it was the only jurisdictional deficiency identified as to the claims against AFGE.

Finally, the third requirement for preclusion is also met: applying the doctrine in this case would not work a basic unfairness to Hudson.  In his Opposition, Plaintiff makes no fairness objection; nor could he make a colorable one.  "An example of . . . unfairness [worked by applying preclusion] would be when the losing party clearly lacked any incentive to litigate the point in the first trial, but the stakes of the second trial are of a vastly greater magnitude." Yamaha, 961 F.2d at 254.  Hudson had every incentive to litigate the point in the first trial.  The preemption question was a jurisdictional issue on which his entire suit depended.  Indeed, he litigated the issue all the way to the D.C. Circuit.  None of the other exceptions to issue preclusion applies in this case either.  Hudson alleges no "intervening change in controlling legal principles," nor does he suggest that the "prior proceedings were seriously defective." Canonsburg Gen. Hosp. v. Burwell, 807 F.3d 295, 306 (D.C. Cir. 2015) (internal quotations marks omitted).

The Court thus finds that all three requirements for applying the doctrine of jurisdictional preclusion have been met.

### 2.  *Objections to Application of Preclusion*

Determined to rewrite an unfavorable chapter in this dispute, Hudson presses several objections to the application of preclusion here.  First, he contends that "the jurisdictional issue

decided . . . in <u>Hudson Membership</u> is not the same jurisdictional issue which Hudson brings in this matter" because the former suit was directed at Local 1923's conduct, while the instant case concerns AFGE National.  <u>See</u> ECF No. 41 (Opp. to MTD) at 5.  Not quite.  It is true that Local 1923 was a named defendant in <u>Hudson Membership</u>, but so was AFGE National.  More telling, the Complaint in that case was unquestionably directed to AFGE National's handling of Hudson's membership as much as it was to Local 1923's actions; indeed, Plaintiff went to great lengths to specify the legal theories under which he was seeking to hold AFGE liable.  <u>See, e.g.</u>, Hudson Mem. Compl., ¶¶ 141, 151, 198 (alleging AFGE National liable for violations of Hudson's rights by its officers under *respondeat superior* theory); <u>id.</u>, ¶ 152 (referring to "unlawful actions of AFGE National"); <u>see also, e.g.</u>, Compl., ¶ 223 (same).  Were there any remaining doubt, this Court explicitly extended its jurisdictional determinations to claims against AFGE National.  <u>Hudson Membership</u>, 2020 WL 3035039, at *3–4.

Second, Hudson submits that AFGE's "racially more favorable treatment of Galle" was not an issue that was "actually and necessarily determined" in <u>Hudson Membership</u>.  <u>See</u> Opp. to MTD at 5.  At first blush, he seems to be on to something here.  After all, at least some of the events involving AFGE's more favorable treatment of Galle occurred <u>after</u> the dismissal in <u>Hudson Membership</u>.  <u>See, e.g.</u>, Compl., ¶ 186 (noting Galle did not settle debts until 2021).  The "curable defect" exception to jurisdictional preclusion provides, moreover, that a "claim of jurisdiction is not precluded if . . . in the interim subsequent to the initial dismissal there are developments tending to 'cure' the jurisdictional deficiency identified in the first suit."  <u>GAF Corp.</u>, 818 F.2d at 912–13.

This balloon reaches no heights, however, because the facts about Galle's membership troubles are irrelevant to the identified jurisdictional deficiency and thus fail to "cure" it.  In

other words, whether these facts make Plaintiff's discrimination claim more tenable matters not

at all because the question here is antecedent to, and separate from, those merits.  In Hudson

Membership, this Court concluded that Congress intended for Hudson's claims alleging

discrimination in membership to be channeled through § 7116(b)(4) of the CSRA.  See 2020 WL

3035039, at *7.  The strength of such claims has no bearing on that conclusion.  See Wright &

Miller, Federal Practice and Procedure, § 4417 ("[A]sk whether the new facts are in any way

distinguishable from the facts found in the first suit for purposes of the substantive rules applied

in the first suit.  . . . If no distinctions can be found, preclusion applies.").

In his next foray, Hudson seeks to distinguish his instant suit on the ground that his

"status as a private-sector retiree [was] not before the Court" in Hudson Membership.  See Opp.

to MTD at 5.  Plaintiff is right to an extent: until his appeal, he had not raised his status as a

private-sector retiree, much less argued that it affected the CSRA-preemption question.  Hudson

Membership Appeal, 2021 WL 4811388, at *1 ("Hudson seeks to bring an entirely new

argument as to why the Civil Service Reform Act does not apply to him — that he is 'not a

retired federal employee' but 'a retired private sector employee.'").

This distinction, however, affords Hudson no relief.  "[O]nce an issue is raised and

determined, it is the entire issue that is precluded, not just the particular arguments raised in

support of it in the first case."  Yamaha, 961 F.2d at 254 (emphasis added).  That rule furthers

the purpose of the preclusion doctrine, which is to "protect[] the functioning of the courts by

promoting finality and avoiding the unnecessary expenditure of judicial resources," even when

the first judgment is "patently erroneous."  Canonsburg, 807 F.3d at 306–07.  A plaintiff thus

may not circumvent issue preclusion by raising a legal theory or fact he declined to present or

highlight in the first suit, even if the new angle presents a closer question.  Secs. Indus. Ass'n v.

Bd. of Governors, 900 F.2d 360, 364 (D.C. Cir. 1990); see also Hall, 285 F.3d at 81 (holding that where issue in prior case was "whether the CSRA 'constituted the sole remedy for [Defendant's] alleged conduct,'" even plaintiff's new claims in separate suit "[were] not new issues but simply new legal theories").

That is exactly what Hudson seeks to do here.  While he has recharacterized his status as a private-sector retiree, rather than a former federal employee, he does so in service of the same position he took in Hudson Membership — namely, that his grievances are not of the kind that should be channeled through the CSRA.  While Plaintiff's arguments have changed slightly, most everything else has stayed constant: the applicable rule of law for assessing each side's arguments remains the same; Hudson's claims are largely the same; and the evidence and arguments on the preemption issue in this case overlap substantially with those in Hudson Membership.  See Wright & Miller, Federal Practice and Procedure, § 4417 (listing factors to help determine whether two seemingly distinct issues are the same, including whether legal standard is similar, extent of overlap in evidence and arguments, and similarity of claims in successive suits).  Yamaha and its progeny thus foreclose Hudson's attempt to relitigate a decided issue by raising an argument that could have been presented in the earlier proceeding adjudicating the same underlying issue.  Yamaha, 961 F.2d at 255 (noting that issue preclusion cannot be avoided "by offering evidence in the second proceeding that could have been [provided], but was not, in the first").  Foreclosure seems particularly appropriate given that Hudson's new approach is based on facts "that [were] fixed by the time of the first litigation." Wright & Miller, § 4417 ("Broad definition of the issue precluded is most appropriate when an attempt is made to advance new arguments as to facts that had been fixed by the time of the first litigation.").

Hudson next contends that this Court, during a hearing on his motion for a preliminary injunction, "basically conceded" that the jurisdictional issue in this case had not been actually determined before. See Opp. to MTD at 7–8. It did no such thing. Plaintiff fixates on the Court's statement that "if [it] find[s] there is preemption . . . , then [Hudson] could appeal [the judgment]." Id. at 8. The Court was not, however, referring to what it found or did not find in Hudson Membership; it was referring only to its hypothetical future findings on preemption in the current case, which were naturally nonexistent at that stage.

In his final throw, seeking to turn the tables on AFGE and use estoppel for his own benefit, Hudson also maintains that Defendant is the one estopped from asserting that this Court lacks jurisdiction to consider his LMRDA claims because "[AFGE] argued the opposite in related case 18-1230." Opp. to MTD at 8. In that case, the union brought a claim against Hudson under § 501 of the LMRDA and, naturally, defended the Court's jurisdiction to hear it. See ECF No. 43 (Reply) at 4. Hudson contends that AFGE's position there is "inconsistent" with its stance that this Court now lacks jurisdiction to consider his LMRDA claims. See Opp. to MTD at 10. As a threshold matter, Hudson never explains how estoppel is even relevant to a precluded issue, and this Court is not convinced that it is. Even if it were, the Court perceives no inconsistency in AFGE's positions. The issues in each case are materially different. While Hudson's claims relate to the union's handling of his membership and rights, AFGE's arise from the purported fiduciary duties a union officer owes to the union. Id. at 9. It is at least potentially consistent to argue both that Hudson's claims against AFGE are of the type Congress intended to be covered by CSRA, and that claims by a union against a former officer are not.

Before leaving this section, the court briefly addresses two additional wrinkles relating to the discrimination claims that Hudson never raises. Neither affects the Court's judgment on

preclusion.  First, Plaintiff might have argued that because he did not assert a claim under the

D.C. Human Rights Act (DCHRA) in Hudson Membership, the Court's jurisdiction to consider

that "new" claim has yet to be decided.  Yet that would define "issue" too narrowly.  As this

Court just explained, the jurisdictional question decided by Hudson Membership as it relates to

AFGE's allegedly discriminatory membership actions was whether Hudson's grievances must be

exclusively channeled through the CSRA.  Id. at *7.  This Court's answer to that question was

explicitly agnostic as to the statutory vehicle by which the grievance was presented.  Id. (noting

that Hudson's discrimination claims merely "dress[] up his membership claim," which is

preempted, "with a different label").  The preclusive effect of Hudson Membership thus extends

to the DCHRA claim.  See Hall, 285 F.3d at 81 (holding that CSRA-preemption finding in

earlier section 1985 case had preclusive effect on case involving same parties but concerning

only common-law tort claims).

Second, Hudson might have argued that because this Court's Opinion also addressed

12(b)(6) grounds for dismissing the discrimination claims, the jurisdictional issue cannot be

precluded because it was only an alternative ground for decision.  Hudson Membership, 2020

WL 3035039, at *7.  "[C]ases and commentators are divided" on the preclusive effect of an

alternate holding.  Dozier v. Ford Motor Co., 702 F.2d 1189, 1193–94 (D.C. Cir. 1983).  Even

assuming that obstacle away in Hudson's favor, he would still be out of luck.  For one, the

"absence of jurisdiction meant the [court] could not and did not actually resolve on the merits"

the claim against AFGE, "and so the court's comments on the [12(b)(6) grounds for dismissal]

were merely dictum," not an alternate holding.  Capitol Servs. Mgmt., Inc. v. Vesta Corp., 933

F.3d 784, 794 (D.C. Cir. 2019) (alterations and internal quotations omitted); see also United

States v. Cmty. Health Sys., Inc., 501 F.3d 493, 507 (6th Cir. 2007) (finding that merits

determination following conclusion that court lacked subject-matter jurisdiction "is more properly characterized as dicta than an alternative holding.").  This Circuit has made clear, moreover, that where an appellate court affirms one of two alternative grounds for decision, the preclusive effect extends to that ground.  Synanon Church v. United States, 820 F.2d 421, 424–25 (D.C. Cir. 1987); cf. Dozier, 702 F.2d at 1194.  In this case, the D.C. Circuit characterized Hudson Membership as a dismissal "for lack of jurisdiction" and affirmed in summary fashion.  See 2021 WL 4811388, at *1–2.  While the panel did not wade into the merits of the jurisdictional issue, that was only because Hudson had abandoned the arguments he presented before this Court and "rest[ed] his entire appeal on a new [jurisdictional] argument."  Id. at *2.  For our purposes, then, the Circuit's decision is best understood as affirming on the jurisdictional ground.

As all of Hudson's objections to the application of issue preclusion are thus unavailing, the Court is bound by Hudson Membership to dismiss the lion's share of counts here for lack of jurisdiction.

### B. LMRA Claim on Behalf of Local 3723

The Court now returns to the claim it previously set aside to examine preclusion.  Recall that after Hudson Membership was decided, California-based Local 3723 voted to admit Hudson as a retired member of AFGE in good standing.  See Compl., ¶ 163.  AFGE National, however, declined to recognize the Local 3723 vote, responding that its Constitution did not permit retroactive membership.  Id., ¶¶ 121, 198.  Woven into the various counts in Hudson's Complaint here is an LMRA claim brought on behalf of Local 3723 against AFGE National for undermining the Local's autonomy by refusing to acknowledge its election of Hudson into membership.

The Court begins by explaining why the issue of its jurisdiction to consider this claim is not precluded.  It then considers separately CSRA preemption and the claim's merits.

    1. *Preclusion*

Hudson contends that this Court has yet to decide whether the CSRA preempts his LMRA claim on behalf of Local 3723; as such, issue preclusion does not apply.  See Opp. to MTD at 5. The Court agrees.

Section 301 of the LMRA provides that "[s]uits for violation of contracts between . . . labor organizations [as defined in this chapter] may be brought in any district court of the United States having jurisdiction of the parties."  29 U.S.C. § 185(a).  The Supreme Court has explained that because "[m]embers of a collective-bargaining unit are often the beneficiaries of . . . interunion contracts, . . . they . . . may bring suit on these contracts under § 301."  Wooddell v. Int'l Bhd. of Elec. Workers, Loc. 71, 502 U.S. 93, 101 (1991).  Because "union constitutions are an important form of contract between labor organizations," they are enforceable under § 301. Id.  Hudson alleges that AFGE breached its own National Constitution and the AFGE Local 3723 Constitution by "overrul[ing] Local 3723's autonomous decision to readmit him retroactively" and "refusing to admit [him] as an AFGE Retired member in good standing." Opp. to MTD at 23; Compl., ¶ 250.

As this Court has now explained at length, Hudson Membership addressed the CSRA's preemptive effect on claims arising from the relationship between Hudson, who is a former federal employee, and a CSRA-covered union.  Hudson's § 301 claim is a different beast. Although Plaintiff is the nominal claimant, this cause of action arises from the relationship between a labor organization and its subsidiary for a violation of the latter's contractual rights.

Hudson Membership said nothing about the CSRA's preemptive effect on those types of claims because it did not need to.  Preclusion therefore cannot apply.

Before proceeding, the Court briefly addresses Hudson's passing assertion of a claim on behalf of Local 1923.  See Compl., ¶ 259.  While this may seem parallel to the claim on behalf of Local 3723, it does not clear the preclusion bar.  Plaintiff asserts that AFGE breached its Constitution and the Local 1923 Constitution by taking "adverse actions against [him]" without proper "notice and due process" and by "failing to accept [him] as a Retired member of Local 1923."  Id., ¶¶ 260–61.  Unlike Hudson's claim on behalf of Local 3723, however, such a claim does not truly implicate Local 1923.  Its actual substance turns on allegations that AFGE violated duties it owed to him when it revoked his membership.  That is precisely the sort of claim that Hudson Membership held was covered by the CSRA.  The Complaint contains no explanation for how AFGE's alleged mistreatment of Hudson separately breached AFGE's contract with Local 1923.  Simply stating that Hudson is "stand[ing] in the shoes of Local 1923" does not make it so.  See Compl., ¶ 259.  As such, the analysis that follows is limited to the claim brought on behalf of Local 3723.

2.   *CSRA Preemption*

Having determined that its jurisdiction to consider the Local 3723 LMRA claim is an open question, this Court will now answer it.  The D.C. Circuit has laid out a two-part test to assess a statute's preemptive effect: "Congress intended that a litigant proceed exclusively through a statutory scheme . . . when (i) such intent is 'fairly discernible in the statutory scheme,' and (ii) the litigant's claims are 'of the type Congress intended to be reviewed within [the] statutory structure.'"  AFGE v. Trump, 929 F.3d 748, 754–55 (D.C. Cir. 2019) (quoting Jarkesy v. SEC, 803 F.3d 9, 15 (D.C. Cir. 2015)).

22

In the case of the CSRA, the first step is straightforward. The Supreme Court has concluded, in no uncertain terms, that Congress intended that Act to establish an exclusive remedial scheme. Elgin v. Dep't of Treasury, 567 U.S. 1, 11–12 (2012) ("Given the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court."); see also Sec'y of Air Force, 716 F.3d at 636 ("[T]he CSRA provides 'the exclusive avenue for suit' to a plaintiff whose claims fall within its scope.") (internal quotations omitted); id. at 637 ("[T]he FSLMRS's remedial regime is exclusive.").

The trickier question is whether the claim on Local 3723's behalf is of the type Congress intended to channel through the CSRA. The Court concludes that it is not. The CSRA's "comprehensive and exclusive" statutory scheme governs "employee relations in the federal sector." Sec'y of Air Force, 716 F.3d at 636 (citations and internal quotations omitted). That is why this Court found that it lacked jurisdiction to hear Hudson's personal claims in Hudson Membership. But for purposes of the Local-3723 LMRA claim, Plaintiff is not raising a grievance arising from his relationship with a CSRA-covered union; rather, he is "stand[ing] in the shoes of Local 3723" alleging a breach of the Local's contract with AFGE, another labor organization. See Compl., ¶ 256. The CSRA does not address or even appear to mention relations between labor organizations. The provision regulating unfair labor practices, which this Court relied on for its preemption analysis in Hudson Membership, refers only to the relationship between labor organizations and "employees," and not to the relationship between two labor organizations. See 5 U.S.C. § 7116(b). It is a stretch to suggest that Congress intended that an Act designed "to prescribe certain rights and obligations" of federal employees would also

govern the rights and obligations of labor organizations *vis-à-vis* other labor organizations.  Id. § 7101(b).

Admittedly, the Local-3723 LMRA claim springs from AFGE's failure to recognize the Local's decision to admit Hudson as a member.  The claim may thus appear similar enough to Hudson's other causes of action to fall within the CSRA's purview.  Unlike in the remainder of his counts, however, Hudson's relationship with AFGE is collateral to the Local-3723 LMRA claim.  Here, it is only AFGE National's contractual relationship with Local 3723, and the duties the former owes to the latter, that Hudson seeks to enforce.  The CSRA does not even purport to govern that relationship.  The Court may therefore proceed to evaluate the merits of the claim.

3.  *Merits*

In seeking dismissal on the merits, AFGE offers two bases.  First, it contends that the Complaint never cites which portion of the AFGE Constitution was violated, and that to the extent Hudson invokes Article III, section 1, he has failed to state a claim.  AFGE is correct that Plaintiff does not cite specific provisions of the AFGE Constitution.  The Complaint, which clearly takes issue with AFGE's decision to overrule Local 3723's admission of Hudson as a member, nonetheless provides sufficient notice that Plaintiff may at a minimum be alleging a violation of Article III, section 2, which provides that "Locals shall have full power to elect or reject applicants for membership."  See https://www.afge.org/globalassets/documents/afge-national-constitution.pdf.

Second, AFGE asserts in passing that as a mixed union, it is not a "labor organization" for LMRA purposes, and so the claim must be dismissed on that basis.  See MTD at 16 n.1.  The Court disagrees.  As it previously found in a case involving the same parties, "The Department of Labor and this Circuit have interpreted the LMRDA, but not the LMRA, to apply to mixed

unions.  Because the two statutes define 'labor organization' in functionally equivalent terms, however," it follows from circuit precedent that the LMRA also extends to mixed unions. Hudson v. AFGE, 318 F. Supp. 3d 7, 14 (D.D.C. 2018) (citing Wildeberger v. AFGE, 86 F.3d 1188, 1192 (D.C. Cir. 1996)).  The Court concludes that AFGE is covered by the LMRA.

## IV.    Conclusion

For the foregoing reasons, the Court will grant the Motion to Dismiss in part and deny it in part.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  August 30, 2022