UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE HUDSON, JR.,

    Plaintiff,

    v.

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES,

    Defendant.

Civil Action No. 22-289 (JEB)

**MEMORANDUM OPINION**

    Earlier this year, Plaintiff Eugene Hudson, Jr. brought a hodgepodge of claims alleging that Defendant American Federation of Government Employees unlawfully denied him membership in the Union. AFGE moved to dismiss the Complaint. It argued that the Civil Service Reform Act's (CSRA) exclusive-review scheme preempted his lawsuit, and that this Court therefore lacked jurisdiction to consider his various counts. The Union added, moreover, that issue preclusion barred even reopening that jurisdictional question because this Court had already resolved it in AFGE's favor in a prior case involving the same parties and very similar causes of action.

    This Court largely agreed. It granted the motion on the basis of preclusion as to all but a single claim buried in Hudson's Complaint: his Labor Management Relations Act (LMRA) claim "on behalf of Local 3723," which asserted that AFGE had violated its own constitution when it declined to retroactively recognize Hudson as a member of Local 3723 after the Local voted to admit him. The Court found that because this claim was not sufficiently similar to the other membership claims in the prior case, the question of its preemption had not yet been

1

decided and preclusion was thus not warranted.  The Court then engaged in an independent preemption analysis.  It concluded that the claim was not preempted because it arose from the relationship between a national union and its local, not the relationship between Hudson and AFGE, and so was collateral to the statute's review scheme.  The Union now asks the Court to reconsider its decision on the LMRA claim.  It explains that the Court's distinction between types of claim is not legally significant, and so the LMRA claim is precluded by its prior holding.  The Court agrees, will grant the Motion, and dismiss the case.

**I.      Legal Standard**

Federal Rule of Civil Procedure 54(b) provides that interlocutory decisions may be "revised at any time before the entry of a judgment adjudicating all the claims" in the action. Reconsideration of such decisions is "available under the standard 'as justice requires,'" which affords courts wide latitude and substantial discretion.  Mahoney v. U.S. Capitol Police Bd., 566 F. Supp. 3d 22, 25 (D.D.C. 2022) (citation and internal quotations omitted); see also Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc., 630 F.3d 217, 227 (D.C. Cir. 2011).  The court's task, essentially, is to determine "whether [relief upon] reconsideration is necessary under the relevant circumstances."  Lewis v. Dist. of Columbia, 736 F. Supp. 2d 98, 102 (D.D.C. 2010) (quoting Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004)).  Amorphous as that standard may seem, it is grounded in concrete considerations and "hardly [offers] a free pass."  Mahoney, 566 F. Supp. 3d at 25; Singh v. George Washington Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (noting that "as justice requires" standard entails considerations such as whether court "patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a

controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court").

**II.     Analysis**

The Court first considers whether it is appropriate even to revisit its earlier decision. After deciding that issue in the affirmative, it next analyzes the merits of the question.

   A. Reconsideration

The Union asks the Court to reconsider its conclusion that Hudson's LMRA claim should not be dismissed for lack of jurisdiction. See ECF No. 47 (Motion for Reconsideration) at 5–6. Hudson rejoins that the Court has already decided this issue and has no business retreading the same ground. See ECF No. 48 (Opp. to Motion for Reconsideration) at 1–3. The Court disagrees.

According to AFGE, the Court should not have retained the LMRA claim on the erroneous ground that it was collateral to the dismissed membership claims. "A claim is not collateral to a statutory scheme, and therefore may be preempted, if it is at bottom an attempt to reverse an action that is covered by the scheme." Mot. at 5 (citations and internal quotations omitted). And the LMRA claim, AFGE continues, is "at bottom" an attempt to reverse AFGE's denial of Hudson's membership rights, even if it is nominally on Local 3723's behalf. Id. at 5–6. That is a new argument. In its Motion to Dismiss, AFGE grouped Hudson's counts together and discussed CSRA preemption of them in broad strokes. As a consequence of that approach, Defendant did not address whether or how the facial dissimilarities of the LMRA claim to the rest of Hudson's causes of action affected the preemption analysis.

On the one hand, the prior failure to address that issue is a problem for Defendant. Requests for reconsideration typically "cannot be used as . . . a vehicle for presenting theories or

3

arguments that could have been advanced earlier." Loumiet v. United States, 65 F. Supp. 3d 19, 24 (D.D.C. 2014) (citations and internal quotations omitted). On the other hand, the Court recognizes that the fault for AFGE's incomplete briefing at the motion-to-dismiss stage does not fall entirely — or even mostly — on AFGE. As this Court previously noted, Hudson's Complaint was "no model of clarity." Hudson v. AFGE (Hudson Membership II), No. 22-289, 2022 WL 3786919, at *4 (D.D.C. Aug. 30, 2022). The surviving claim was scattered across two counts, both of which were titled as claims "for violation of Plaintiff's rights" under the LMRA. See ECF No. 1 (Complaint) at 35–36 (emphasis added). Neither count spelled out the contours of the alleged LMRA violation in any detail. The Court was able to piece together a rough outline of the claim only upon a close reading of scattered paragraphs in the Complaint, see id., ¶¶ 247, 256, and, even then, it was still left with notable blanks to fill (for example, Hudson had failed to specify which AFGE Constitutional provision had been violated, so the Court added the missing piece, Hudson Membership II, 2022 WL 3786919, at *11). In that context, it is not clear that AFGE's specific arguments about this Court's jurisdiction to consider the LMRA claim "could have been advanced earlier." Loumiet, 65 F. Supp. 3d at 24. Rather, it appears that AFGE is reasonably asking for an opportunity to respond directly to a claim that was obfuscated in Hudson's Complaint and clarified by this Court's Opinion. In these unique circumstances, "justice requires" that it be permitted to do so.

Reconsideration is appropriate under the circumstances of this case for another critical reason: AFGE's argument is jurisdictional, and jurisdiction is a unique issue. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added). A court may thus entertain a motion for reconsideration raising a possible jurisdictional defect "at any time irrespective of whether the

4

requirements of Rule 54(b) are satisfied." Said v. Nat'l R.R. Passenger Corp., 390 F. Supp. 3d 46, 52 (D.D.C. 2019), aff'd, 815 F. App'x 561 (D.C. Cir. 2020).

Having determined that reconsideration is appropriate here, the Court will now evaluate AFGE's argument on the merits.

B. Merits

Before diving in, the Court will define the precise scope of the issue presented here. That requires going back to 2019, when Hudson brought his first Complaint protesting AFGE's refusal to recognize his membership in the Union. Hudson v. AFGE (Hudson Membership I), No. 19-2738, 2020 WL 3035039 (D.D.C. June 5, 2020). This Court dismissed that suit for lack of jurisdiction. It held that the CSRA preempts (a) grievances relating to exclusion from membership in AFGE that are (b) brought by Hudson or someone in his position. Hudson Membership II, 2022 WL 3786919, at *5, 8.

A few years later, Hudson tried his luck once more by filing a Complaint in this case, which pleading included the LMRA claim plus a host of other claims that more closely resembled those in Hudson Membership I. Id. at *1–3. This Court relied on issue preclusion to dismiss the bulk of that Complaint for lack of jurisdiction. In so doing, it declined to revisit its conclusion that the "CSRA provide[s] the exclusive means of redress for Plaintiff's grievances related to his exclusion from membership in an AFGE Local." Id. at *5. It also found that all but one of the claims in Hudson's Complaint presented precisely such a grievance. Id. Hudson Membership I therefore dictated that this Court lacked jurisdiction to consider those claims.

The LMRA claim, however, survived the motion to dismiss on very narrow grounds. This Court first found that the question of its preemption had not been decided by Hudson Membership I because the LMRA claim was a "different beast" from the rest. Id. at *10. In

5

other words, unlike the majority of his claims in both membership cases, the LMRA claim was not a grievance brought by Hudson about his exclusion from membership in AFGE, and issue preclusion thus did not apply. The Court therefore conducted a preemption analysis anew and found that the LMRA claim was collateral to the CSRA's review scheme and so was not preempted.

AFGE now contends that the Court erred at the first juncture. According to Defendant, the LMRA claim is the same as the rest of Hudson's membership claims — at least for preemption purposes. If AFGE is correct about that, and if no other exceptions to preemption apply, then the preemption conclusion in Hudson Membership I extends to the LMRA claim. As a result, it would be precluded in the same manner as the other membership claims.

The Court ultimately concludes that AFGE is indeed correct. In reaching that decision — which is not simple and concerns a nuanced legal determination — it is guided primarily by two Supreme Court cases that illustrate when seemingly dissimilar claims can be the same for preemption purposes. Neither case addresses precisely the scenario presented here, but each points to the same conclusion. The Court also notes that its inquiry is complicated by the fact that Plaintiff ignores this basis for reconsideration altogether in his Opposition. He uses his brief to argue that Local 3723 is a mixed union, which does not engage with the preemption question. See Opp. at 3–6. The Court is therefore once again left to guess at Hudson's position on the issue.

1. *Sameness of Claim*

Begin with Elgin v. Department of the Treasury, 567 U.S. 1 (2012), a case that turned on the preemptive scope of the portion of the CSRA dealing with adverse employment actions against federal employees. Petitioners there were former federal employees who had failed to

register for the draft.  Id. at 7.  Federal law "bars from employment by an Executive agency anyone who has knowingly and willfully failed to register."  Id. (citing 5 U.S.C. § 3328).  Petitioners were accordingly discharged by their employing agencies.  Id.  In response, they filed suit in federal district court and raised several constitutional challenges to § 3328 and to the Military Selective Service Act, which establishes the draft.  Id.  Respondents countered that those claims should have been channeled through the CSRA, which provides recourse to individuals who are discharged from federal employment.  "Petitioners [did] not dispute that they [were] employees who suffered adverse actions covered by the . . . CSRA," nor did they "contest that the CSRA's text and structure support implied preclusion of district court jurisdiction."  Id. at 12.  The question in Elgin, then, was narrow: did the Act also "provide[] the exclusive avenue to judicial review when a qualifying employee challenges an adverse employment action by arguing that a federal statute is unconstitutional"?  Id. at 5 (emphasis added).  The answer, the Court held, was yes.  Id. at 23.

It reasoned that "[n]othing in the CSRA's text suggests that its exclusive review scheme is inapplicable simply because a covered employee challenges a covered action on the ground that the statute authorizing that action is unconstitutional."  Id. at 13.  In reaching that conclusion, the Court articulated a more broadly applicable rule: for CSRA-preemption purposes, courts should distinguish between claims not based on their legal vehicle, but rather based on the type of employee and agency action at issue.  Id. at 15.  And since petitioners were covered employees ultimately challenging their discharge (albeit indirectly), their claims were essentially indistinguishable for preemption purposes from a direct challenge to their discharge.

While Elgin treated with Chapter 75 of the CSRA, id. at 11 (citing Subchapter II of Chapter 75 of CSRA), which is a different chapter from the one before this Court (Chapter 71),

7

its stated rule for defining which claims are or are not preempted applies with equal force here. As with Chapter 75, the "availability of administrative and judicial review" under Chapter 71 turns primarily on the type of adverse action at issue and on the type of individual injured. See 5 U.S.C. § 7103(a)(2), 7103(a)(4) (defining "employee" and "labor organization"); id. § 7116 (defining "unfair labor practice"); id. § 7118 (providing administrative-review process when "labor organization" is charged with engaging in "unfair labor practice"); see also Elgin, 567 U.S. at 12–13 (listing analogous provisions in Chapter 75 of CRSA and relying on them to devise jurisdictional rule).

Under Elgin's logic, then, two questions are key to defining the category of claims preempted by a statutory scheme like the CSRA: (a) who is bringing the claim, and (b) what type of action is being challenged?  In Hudson Membership I, this Court defined that category as claims for which the answers to those two questions are (a) Hudson (or someone in his position), and (b) AFGE's refusal to recognize his membership in the Union.  Hudson Membership I, 2020 WL 3035039, at *8; Hudson Membership II, 2022 WL 3786919, at *7.

Viewed through the lens of those two questions, the LMRA claim comfortably fits within the category of claims found to be preempted in Hudson Membership I.  The individual bringing the challenge is Hudson himself.  The action ultimately being challenged is AFGE's refusal to recognize Hudson as a rightful member of the Union, both presently and retroactively.  Putting two and two together, the LMRA claim is an "object[ion by Hudson] to AFGE's refusal to recognize his membership in one of its Locals."  Hudson Membership II, 2022 WL 3786919, at *6 (summarizing scope of preemption holding in Hudson Membership I).  In each of the ways deemed salient by Elgin and its progeny, then, the LMRA claim is not in fact a "different beast." Id. at *10.

2. *Possible Objections to Preemption*

Two possible obstacles to applying the aforementioned line of reasoning emerge. Neither was raised by Hudson, but the Court will analyze them anyway.

a. Presence of a Third Party

First, what of the fact that Plaintiff claims to be suing in the shoes of Local 3723? That seems to add a wrinkle to the "same employee same action" analysis. Local 3723, after all, is an entity distinct from Hudson. Does the purported presence of a third, non-CSRA-covered party render the claim collateral to the CSRA's review scheme, even if only partly? This Court initially concluded that it did but will revisit that conclusion now.

The threshold flaw with this objection is that Local 3723 is not the plaintiff here, no matter how Hudson seeks to spin it. As AFGE points out, Hudson is the one suing, and it is his injury from which constitutional standing to sue appears to derive. See Mot. at 6 n.5; cf. Curtis A. Bradley & Ernest A. Young, Unpacking Third-Party Standing, 131 Yale L.J. 1, 19–25 (2021) (discussing prudential roots of third-party standing and explaining that parties in Hudson's position typically derive their constitutional standing from injuries to themselves). It is also Hudson's burden to show that the Court has jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Yet, he makes no effort to elucidate the legal theory permitting him to sue "in Local 3723's shoes," nor does he explain why he may rely on a few turns of phrase in his pleading to create jurisdiction where there otherwise would be none. In short, then, the simple answer is the correct one: Hudson is the one bringing the LMRA claim.

Even setting that deficiency aside, however, the remainder of Elgin's analysis suggests that the correct focus for a court in assessing whether a claim is "collateral" to a statutory-review

scheme is not the identity of the nominal claimants, but rather the sameness of the ultimate relief sought. To elucidate that point, the Court will continue to march through Elgin.

There are a limited number of reasons a court may find that a claim is not of the "type that Congress intended to be reviewed within [a statutory] scheme," even though the scheme is exclusive. Elgin, 567 U.S. at 15 (citing Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 489 (2010)). The Elgin petitioners invoked all of them, but only one is relevant here: suits "wholly collateral to a statute's review provisions" are typically not preempted by the statute. Id. According to the petitioners there, their claims were collateral to the CSRA because the constitutional challenges to the various statutes underpinning their discharge had "nothing to do with" the sorts of quotidian employment disputes the Act was designed to address. Id. at 21–22.

Notwithstanding those differences, however, the Court concluded that the constitutional claims were not collateral to the CSRA's scheme. In so doing, the Elgin majority focused almost exclusively on the requested remedies tied to those claims. "As evidenced by their district court complaint," the Court explained, "petitioners' constitutional claims are the vehicle by which they seek to reverse the removal decisions, to return to federal employment, and to receive the compensation they would have earned but for the adverse employment action." Id. at 22 (emphasis added). And that is "precisely the kind[] of relief that the CSRA" affords. Id. On that basis, the Court rejected petitioners' argument. The takeaway from Elgin is clear: the inquiry into whether a claim is collateral to a statutory-review scheme requires looking past the labels placed on a claim, and instead scrutinizing the relief sought by the claimant.

Like the petitioners in Elgin, Hudson has a credible argument that his LMRA claim is collateral to the CSRA's review scheme and has "nothing to do" with it. But the argument is

10

credible only if the Court focuses on a single aspect of the LMRA claim — the fact that Plaintiff is purportedly suing in Local 3723's shoes — to the exclusion of many others. While Elgin did not address situations where a plaintiff purports to be suing in the shoes of another entity, the case did caution against such a myopic analysis. Elgin stands for the proposition that courts must consider claims through the perspective of the requested relief in order to answer the preemption question. In this case, that framing makes all the difference. Hudson does not seek a unique form of relief for the LMRA claim. Indeed, nowhere in his Complaint does he specifically seek relief for Local 3723 and its membership. Instead, he requests the same relief for all of his claims: reinstatement to the ranks of the AFGE membership and, more specifically, retroactive recognition of his membership rights. See Compl. at 43–44 (asking Court to issue Order "[d]irecting Defendant AFGE to immediately reinstate Plaintiff" as member of Local 3723). Needless to say, said relief would inure primarily to his benefit. That makes clear what phrases like "in the shoes of Local 3723" obscure: Hudson is the relevant claimant for purposes of the preemption analysis. The LMRA claim is thus one and the same as the other claims he brings on his own behalf.

                b.   Framing of Challenged Action

The second potential wrinkle emerges when one defines the nature of the challenged action with more specificity. The "covered action" as defined in Hudson Membership I is AFGE's refusal to recognize Hudson as a union member. At least conceptually, it is possible to separate that action from the one being challenged by the LMRA claim: that is, AFGE's refusal to recognize the results of a vote by Local 3723. So framed, the question of whether such an action is covered by the CSRA remains unanswered by this Court's prior decision. Once again, however, binding precedent instructs that this framing of the LMRA claim is the wrong one.

Two claims may be sufficiently alike for preemption purposes if they would, if successful, yield the same relief, even if other slight differences between them exist. Though Elgin illustrated that principle, the Court finds it useful to introduce a second case that elucidates the rule from a different angle. Once again, it begs the reader's indulgence as it walks through that case in some detail.

Respondents in Heckler v. Ringer, 466 U.S. 602 (1984), were Medicare claimants who sought reimbursement for a type of surgical procedure known as BCBR. The Secretary of Health and Human Services, however, had complicated their quest for reimbursement by issuing an "administrative instruction" and a "formal administrative ruling" that BCBR was not reimbursable under Medicare. Id. at 607–08. Respondents thus brought a series of constitutional and statutory challenges to those two actions, including objections to the procedures by which the Secretary issued her decisions. Id. at 610, 614. The question for the Court was whether respondents were required to first channel those challenges through the Medicare Act's review provisions. That Act imposes certain administrative-exhaustion requirements on "claims arising under" it. Id. at 605. Judicial review is available to a claimant "only after the Secretary renders a 'final decision' on [a] claim" for reimbursement. Id. And a final decision "is rendered . . . only after the individual claimant has pressed his claim through all designated levels of administrative review." Id. at 606.

The claimants in Heckler had not satisfied that exhaustion prerequisite when they brought their suit. Id. at 612. Instead of seeking individual reimbursement of their claims, they had jumped straight to challenging the Secretary's broader declarations. They contended (and had successfully persuaded the Court of Appeals) that this was permissible, though, because they were "seeking to invalidate the Secretary's procedure for determining entitlement to benefits."

12

Id. at 612. According to respondents, their constitutional and APA challenges were a far cry from the sorts of "substantive claims for benefits" and reimbursement that typically make their way through the Act's many layers of review. Id.

The Supreme Court did not buy that excuse. "[I]t makes no sense to construe" respondents' challenges "as anything more than, at bottom, a claim that they should be paid for their BCBR surgery," the Court explained. Id. at 614. To be sure, plaintiffs were challenging a high-level policy decision that was collateral to the reimbursement decision itself. They had raised, for example, an APA challenge to the Secretary's "decision to issue a generally applicable rule rather than to allow individual adjudication" of BCBR claims. Id. It is not hard to see why that feels distinct from a challenge to, say, a refusal to reimburse a claimant for a particular medical service. Still, the Court found that respondents' "claims [were] 'inextricably intertwined' with . . . claims for benefits." Id. After all, the Court continued, the relief respondents really wanted was the same across the board: reimbursement. Respondents had requested a "declaration from [the Secretary] that the expenses of BCBR surgery are reimbursable under the Medicare Act." Id. at 614. While that declaration would technically fall short of issuing respondents a reimbursement, "[f]ollowing the declaration[,] . . . only essentially ministerial details [would] remain before respondents would" get their money. Id. at 615–16. That was enough to bring the claims within the scope of the review scheme.

Analogizing between the denial of Hudson's union membership and the denial of reimbursement for BCBR surgery may seem like a stretch, especially given the differences between the Medicare Act and the CSRA. See, e.g., id. at 615 (addressing language in Act requiring that a claim "arising under" the Medicare Act be channeled through statutory scheme). Heckler nevertheless remains highly relevant to the preemption analysis because it provides

13

guidance on how courts can most accurately characterize claims for purposes of determining whether they fall within the reach of a statute's review scheme.  Elgin said as much about Heckler, as did this Circuit.  See Elgin, 567 U.S. at 22 (citing Heckler as a case addressing whether certain claims were "wholly collateral to a statutory scheme of administrative and judicial review"); Jarkesy v. SEC, 803 F.3d 9, 23 (D.C. Cir. 2015) (same).

Under Heckler's reasoning, the LMRA claim is at bottom the same as Hudson's other counts.  Like the Heckler respondents, Hudson comes armed with a claim that, at the surface level, appears to be collateral to the statutory scheme at issue.  Like the Heckler respondents, he challenges an action that appears a step or two removed from the sorts of actions covered by that scheme.  The act that allegedly violated the AFGE constitution (and that is the most immediate subject of the LMRA claim) was AFGE's refusal to recognize Local 3723's vote on Hudson's membership status.  Yet, under Heckler's logic, Hudson's claim is "at bottom" just a plea that AFGE recognize his membership in the Union.  After all, following AFGE National's recognition of the Local 3723 vote, even less than "essentially ministerial details" would remain before Hudson gets what he really wants: recognition of his membership rights.  His admission as a member would be all but automatic because recognizing the results of the vote is the same as recognizing Hudson's membership rights.  If there were any remaining question about that equivalency, his Complaint would seal the deal.  As the Court just explained, Plaintiff does not request any form of relief specific to the LMRA claim.  Any conceptual differences notwithstanding, then, the best way to understand the LMRA claim is as an objection to the same fundamental action challenged by the rest of the Complaint.

In sum, Heckler's reasoning confirms what Elgin suggests: for purposes of the preemption analysis, the LMRA claim is at bottom just a challenge to a "covered action" by a "covered employee" for CSRA purposes.

\*   \*   \*

From there, Hudson Membership I and II determine the fate of the LMRA claim. Hudson Membership I decided that a certain category of claims is preempted by the CSRA: Plaintiff's grievances about the denial of his AFGE membership and attendant rights. See 2020 WL 3035039, at *8–10 ("Hudson's [claims] hinge on the loss of his Local membership and inability to run for office. . . . [H]e can challenge these grievances within the CSRA's framework."); see also Hudson Membership II, 2022 WL 3786919, at *7 (explaining that notwithstanding "statutory or legal vehicle[]," Hudson Membership I found that claims objecting to "AFGE's refusal to recognize Hudson's membership" were preempted).

In Hudson Membership II, the Opinion that prompted this Motion, the Court declined to revisit that jurisdictional conclusion on preclusion grounds. Id. at *5 (noting that doctrine of issue preclusion applies to jurisdiction). It found that although the Complaint in this case was seemingly distinct from the one in Hudson Membership I, the claims here — with the exception of the LMRA one — presented the same preemption question as did the prior case, and the Court had decisively answered that question in AFGE's favor. Id. at *6.

Upon reconsideration, the Court has concluded that the LMRA claim is actually not an exception. Rather, as far as the preemption analysis goes, that claim is the same as the rest of the membership claims in Hudson's Complaint and in Hudson Membership I: it is both (a) brought by Hudson, and (b) a challenge to AFGE's refusal to grant him membership in the Union.

Nothing about it, moreover, renders it collateral to the CSRA. As a result, issue preclusion equally applies to preemption of the LMRA claim and thus requires dismissal.

## III. Conclusion

For the foregoing reasons, the Court will grant the Motion for Reconsideration and dismiss the LMRA claim (and thus the case) for lack of jurisdiction. A separate Order so stating will issue this day.

/s/ James E. Boasberg<br>
JAMES E. BOASBERG<br>
United States District Judge

Date: October 31, 2022